## CARSON, *et al.*, Appellants, *vs.* WALKER, *et al.*, Respondents.

1. The Legislature has the power to change the terms of Courts, and to enact that all suits and process which had been made returnable to the term as fixed by the old law, shall be returnable to the term as fixed by the new law.

2. Executions against the estates of deceased persons were legal in this State, until the passage of the Act, approved Dec. 30, 1826, which took effect from May 1, 1827.

3. Under the Act of January 25, 1817, Sec. 5, taken in connection with the Act of January 12, 1822, Sec. 28, where an execution against the estate of a deceased person was issued in less than 18 months after the date of the letters testamentary, but the sale of the lands under it did not take place until more than 18 months had elapsed, the sale is valid.

4. An execution, issued within a period forbidden by law, on a judgment lawfully rendered in a court of general jurisdiction, is not void but only voidable.

5. Under the Statutes of this State, up to 1826, land which the testator had devised in trust for an infant child, might be levied on and sold, under an execution against the estate of the testator.

### *Appeal from St. Louis Court of Common Pleas.*

On the 23d of June, 1850, the appellants filed a petition in the Court of Common Pleas of St. Louis county, stating, that William Stokes died seized and possessed *in fee* of a lot of ground in the city of St. Louis, fronting forty feet on Main street, by one hundred and forty feet deep, and particularly describing its metes and bounds.

That said Stokes, by his last will duly probated in September, 1823, gave John O'Fallon, in trust for Anne Carson, all his real and personal estate, to be held for her use till her marriage or attaining twenty-one years of age.

That at the decease of said Stokes, said Anne, his daughter, was only thirteen years of age, and that she married William Smith before she was twenty-one years old. That Smith died in 1842, and she married the appellant, Carson, in 1843.

On the 25th of January, 1834, O'Fallon, the trustee, conveyed to the said Anne, she being then the wife of Smith, all the real estate vested in him by the will aforesaid. In December, 1843, the said Anne re-conveyed to O'Fallon and Joab Bernard, in trust to her separate use, the property last mentioned.

In October, 1849, O'Fallon released to the said Anne, then Mrs. Carson, all his title and interest in the same.

That in 1833, the defendant, Isaac Walker, under some pretended title, entered into the possession of the premises, and has held them since, under some pretended judicial proceedings; but that the same are fraudulent and void. That if any sale was made, it was under an execution that issued, was levied and sale advertised, prior to the expiration of eighteen months from the death of said Stokes ; that the said property was incapable of division without injury thereto, and the sheriff pretends to have sold it for more than three times the amount of the debt.

That the other appellees were in possession, as tenants of Walker. The petition then prays for possession and for an account of the rents and a judgment for them.

Walker, Throgmorton and Byron, being the only defendants served with process, filed their answer October 10, 1850, stating that they have no information sufficient to form a belief whether Stokes was well seized in fee at his death, or whether said Anne was then about thirteen years old, or what was her age, or whether she married Smith before she was of age. On the 9th of September, 1823, letters testamentary were granted to O'Fallon as executor of said Stokes.

On October 8, 1824, Benoist recovered judgment against said Executor, in the St. Louis Circuit Court, for $664 07.

On the 17th of December, 1824, execution issued thereon to the sheriff of St. Louis county, and the same was levied on the property in dispute, and the said property was advertised for sale, and was sold on the 18th day of April, 1825, at the court house door in the city of St. Louis, to Thomas Houghan, at the highest bid, $2050, and sheriff made the said Houghan a deed, dated April 19, 1825.

On the 13th of December, 1829, said Houghan and wife by their deed of that date, conveyed to Larkin Deaver.

On the 23d of February, 1830, said Deaver, by deed of that date, conveyed to Joshua Walker.

On the 5th of October, 1833, Joshua Walker and wife conveyed to Isaac Walker.

The defendants state that said judgment was a good and valid judgment, *and that the said execution, advertisement, proceedings and sale, were in strict conformity with law, and under and by virtue* of the same, and the subsequent conveyances, all the title of said Stokes was vested in the said Isaac Walker.

That immediately after the execution of the sheriff's deed to Houghan, he entered into possession of the premises adverse to all persons, and the possession has continued uninterruptedly down throughout the several purchasers to this time.

The defendants deny that the judgment, sale and proceedings were void or fraudulent. They had no notice thereof, if fraudulent. They deny that the premises were susceptible of division for the purpose of sale, without injury. That there were on the lot, at the time of sale, a brick dwelling house, and a stone warehouse ; and they were so placed on the said lot as to extend nearly across it, and said lot could not have been divided without injury to the same.

The evidence on the trial was as follows. The plaintiffs in the lower court introduced,

1. The will of Wm. Stokes, of which the only clause important here, is in these words : " I give, devise and bequeath unto John O'Fallon, all my personal estate, upon trust, to dispose of the same as in his discretion he shall think fit. Also, I give, devise and bequeath to him all my real estate, upon trust, without making any forced sale or sacrifice thereof, to convert the same into money, and place into securities of the United States, and to apply the interest and such part of the principal, as may be necessary to the support, maintenance and education of my daughter Anne, who was thirteen years old on the 12th of May last, until she arrives at the age of twenty-one years, and then to pay and deliver to her the whole amount thereof, and all accumulations thereon. In case my daughter shall marry before twenty-one, with the consent of my executor, he

may deliver to her such portion of the principal as he may think fit, to and for her own use and benefit. In case she dies, leaving a child or children, then the property to belong to such child or children ; but in case of her death before twenty-one, without leaving any child or children, then I give the same to my executor for his absolute use and benefit."

" I appoint John O'Fallon executor of my last will, and guardian of my daughter."

2. The deed of John O'Fallon to Anne Smith, conveying to her all the real estate devised him in trust, by the will, dated January 25, 1835.

3. The deed of Anne Smith to John O'Fallon and Joab Bernard, conveying to them all her real estate, and all interest, legal or equitable, in any real estate, in trust, for the sole and separate use of the grantor.

This deed was made with Carson's consent, and in contemplation of marriage between him and the said Anne, dated December 28, 1843.

4. The deed of John O'Fallon to Anne Carson, releasing to her all his title to any property conveyed by the last named deed, dated October 15, 1849.

5. John O'Fallon was then introduced as a witness, and stated that he knew Wm. Stokes ; that he resided in St. Louis, and died September 3, 1823 ; that the plaintiff, Anne, was his daughter and only child, and was the same Anne named in the will of said Stokes ; that she married William Smith, May 20, 1829 ; that he always considered her of the age mentioned in the will. She was not twenty-one years old when she married Smith, who died late in 1842. That about two years after she married Carson.

That Stokes died seized and possessed of the property in dispute ; and the same was then improved. That from the time of instituting this suit, till now, and for two years preceding the institution this suit, the yearly value of the premises was $2500 or $3000.

6. A marriage certificate, showing that the marriage between

Anne Stokes and Wm. Smith, took place May 5, 1829, certified by the minister, the Rev. Mr. Monroe, May 20, 1829.

John O'Fallon, cross-examined by the defendants, stated, that he was present at the sale of the property by the sheriff and bid for it; that $2000 was as much as could have been gotten for it; that the old buildings on it, at the time of the sheriff's sale, have been removed and others put in their place. Thinks they were put there by Deaver or Walker, some ten or twelve years ago; and if the property was in the condition it was at the sheriff's sale, it would not rent for more than $1000 per annum.

All this matter drawn out on the cross-examination, was objected to by the plaintiff as irrelevant and illegal, but the court overruled the objection and would not exclude it from the jury, and the plaintiffs excepted to the opinion of the court.

That the property would not have brought so much if he, O'Fallon, had not attended and bid on it; that he made one Davidson, who was bidding, run the property up to $2000.

7. The plaintiffs then introduced Frederick Dent, as a witness, who stated that he knew Wm. Stokes; that Stokes died in possession of the property in dispute; that Anne, his daughter, was not twenty-one years old when she married Smith, and that in 1820, the warehouse on the lot rented for $600. *Cross-examined*—Property fell in value in 1821-2, and continued depressed five or six years. At the sheriff's sale, there was a dwelling on the lot at the corner of Main and Vine, and this dwelling and a shed that was attached to it, extended nearly the entire extent of the property on Main. It stood back from Main some ten or fifteen feet. It extended on Vine sixty or sixty-five feet to an alley ten or fifteen feet wide. Then there was a house on Vine, about forty feet in front, which had been rented to the Fur Company.

1. The defendants then introduced the record of the suit of *Benoist* v. *Stokes*, showing declaration filed in the Circuit Court clerk's office of St. Louis county, May 16, 1823;

summons issued May 16, 1823 ; summons executed May 16, 1823 ; pleas filed June 9, 1823 ; *scire facias* against O'Fallon, executor of Wm. Stokes, deceased, issued December, 1823 ; returned executed December 16, 1823, and a judgment rendered against said Stokes' executor, October 8, 1824, for $664 07 ; execution issued on the said judgment December 17, 1824, and returnable by the tenor and effect on the 1st Monday in February, 1825. There is no levy endorsed upon the execution, but the advertisement recites a levy, and the advertisement is dated February 24, 1825, and was returned with the execution. . The plaintiffs objected to said record as any evidence in the case, but the Court overruled their objection *and admitted the said record, and plaintiffs excepted to this opinion of the Court.*

2. The defendants then introduced a deed from the sheriff of St. Louis county, to Thomas Houghan, reciting the said judgment and execution, and that after issuing the same, it was made returnable by an act of the Legislature to the March term, 1825, and reciting that the same was levied on the property in dispute, February 24, 1825, and sold April 18, 1825. This execution was originally returnable 1st Monday in February.

The defendants then offered the deeds of Houghan to Deaver ; Deaver and wife to Walker, and Walker to Walker, to all which deeds, including the sheriff's, the plaintiffs objected, and the court overruling their objections, they *excepted to the opinions of the court.*

The defendants then introduced the letters testamentary to John O'Fallon on the estate of Stokes, dated 9th September, 1823.

This was all the evidence offered in the case.

The plaintiffs moved the court to instruct the jury,

1. That the sheriff's deed offered in evidence was inoperative and void, and forms no bar to the plaintiffs' action.

2. That if the execution against O'Fallon, executor of Stokes, issued before eighteen months had expired from the

death of Stokes, or the granting letters testamentary, and was levied and advertised before the expiration of such time, the sale is void, and no bar to the action of the plaintiffs.

3. That the legal title of Stokes in all his real estate, passed by his will to O'Fallon, and if the property in dispute was part of what was so devised to O'Fallon, it was not subject to levy and sale under said execution, and that the sale so made was without authority of law, and conferred no title on the purchaser nor those claiming under him, and they ought to find for the plaintiffs.

4. That said execution issued from the clerk's office of the Circuit Court, conferred no authority in law on the sheriff to make said sale, and said sale was a nullity, and they ought in that case to find for the plaintiffs.

5. That if the property was sold after the return day of the execution, that said sale so made was a nullity, and that in that case the jury ought to find for the plaintiffs, unless they believe some other authority was given the sheriff to make said sale other than that found in said execution.

But the court refused to give any of said instructions, and the plaintiffs *excepted to the opinion of the court.*

The defendants then moved the following instructions :

1. If the sheriff's deed was duly executed at its date by the sheriff of St. Louis county, and that at the sale of the lot therein described, O'Fallon, the executor of Stokes, and trustee in his will, was present and a bidder, and the sale was with his consent, and for the full value of the property at the time, then said sale and deed passed the title of the lot so sold and conveyed.

2. That there is no irregularity in the judgment, execution and proceedings in the suit of *Benoist* v. *Stokes'* executor, or in the sale and deed of sheriff, sufficient to avoid the sale.

To the giving of these instructions plaintiffs objected, but the court gave them, and the plaintiffs excepted to the opinion of the court.

The jury found a verdict for the defendants ; the plaintiffs

moved the court to set aside the verdict and grant a new trial,

1.   Because the court admitted illegal evidence ; 2, excluded legal evidence ; 3, gave illegal instructions ; 4, refused legal instructions ; 5, the verdict was against law and evidence.

The court overruled the motion, and the plaintiffs excepted and appealed to this court.

*Glover & Campbell*, for Appellant, argued that the sheriff's sale to Houghan passed no title, because,

1.   The execution under which it was made was void, having been issued against the testator's lands, within a period during which they were exempted from seizure or sale.

1 Terr. Laws, p. 510.   8 Metcalf, 502.   10 Mass. 365. 7 Mo. 585.   1 Mo. 364.   3 Smedes & Mar. 470–1–2.   16 Verm. 393.   21 Verm. 199.   4 Yeates, 212.   1 Blackf. 210. 3 Howard, 707.   4 Pick. 45.   7 Pick. 156.   6 T. R. 320. 2 Barr, (Pa.) 219.   1 Shep. Touch. top page 122.   5 Verm. 311.   2 Johns. 213.   20 Johns. 341.   1 Peters C. C. R. 64.

To say that an execution could issue, but could not be *executed* until after the lapse of eighteen months, is a contradiction of terms.   A valid execution has no probation to pass through.   It comes into being in full life, and derives its power from the seal of the court, not from the lapse of time.   An execution which commands an officer to do *what he has no power to do*, and to do immediately, is void.

The object of the act of 1817, was to protect the estate of deceased persons from execution for the period named.   To allow execution to issue within that period, would be contrary to the policy of the law.

The provisions of this law are not merely directory.   The directory part of a law is that which points out the *manner* of doing something proper to be done, and the doing of which the laws enjoin.   A departure from this part of a statute will not vitiate *the act which is required to be done.*   6 Wend. 486. But this does not apply where something which the law deems impossible is forbidden.

The consent of O'Fallon cannot make the sale valid, because he had no power to give such consent.

2. This is not merely a question as to the regularity or irregularity of process, but one of *power*, as respects the legal condition of the real estate itself during this prohibition. 2 How. S. C. R. 318. 7 Mo. 105. Ib. 359, 503. 1 Mo. 95. 3 Yerg. 241. 16 Com. 144. 7 Dana, 506. 3 Humph. 213. 2 McCord, 352. 6 Mo. 106. 5 Humph. 56.

3. The levy was void, because it was made after the return day of the execution. The act of February 5, 1825, was merely intended to substitute one *return day* for another, not to allow sheriffs to *levy* after the 7th February, 1825.

*Aylett Buckner*, for same, contended that the sheriff's deed was void, because,

1. The execution issued before the time authorized by law.

2. The levy was made before the time authorized by law.

3. The levy was made after the return day of the execution.

4. No execution could lawfully issue from the clerk's office of the Circuit Court, against the estate of deceased persons, under the administration law of 1822.

5. The land having been devised to O'Fallon, a stranger, was not liable to sale by a writ of *fi. fa* upon judgment against the executor.

6. The execution issued contrary to the directions of the statute.

7. The law did not authorize the sheriff to make a deed of conveyance to the purchaser under a sale of decedent's lands by the act of 1817.

*Finley & Byron*, v. *Caldwell*, 1 Mo. 365. *Scott* v. *Whitehill & Finch*, 1 Mo. 495. 1 Burrows' R. 447. 4 Bibb (Ky.) Rep. 332. 8 Met. 3 How. S. C. R. 229. 2 Mason, 70, *United States* v. *Slade*. 10 Pet. 471. 2 Burr. 217. 1 Mo. 549. 1 Black. 210. 6 Monroe, (Ky.) Rep. 32. *Gault* v. *Ewing*, 3 How. 707. Anthon's Blackstone, 168. 6 Monroe, 421. 2 Powell on Devises, 462. 2 Dallas, 387–8. 3 Dana.

*Spalding & Shepley*, for respondents, argued the following points :

I. The sheriff's deed and sale are not void because of the alteration of the time to which the execution was returnable, and because the sale was made after the return day at the term to which the execution was continued by the statute. 1 Edwards, 860–1, sec. 5. 1 Mo. 691 and 764.

II. The sheriff's deed and sale are not void because the execution issued within eighteen months after letters testamentary issued to O'Fallon, on the death of Stokes. 12 Mo. Rep. 261. Act of January 25, 1817. Act of January 12, 1822, sec. 28. 6 N. H., 63. *Blaine* v. *the Charles Carter*, 4 Cranch, 328. 4 Bibb, 332. 9 Mass. 95. 5 Johns. 89. 4 Wend. 474, 462. 1 Monroe, 94. 5 Monroe, 479. 12 Mo. 238. *Milburn* v. *State*, 11 Mo. 188. 11 Mo. 384. *Reed* v. *Heirs of Austin*, 9 Mo. 731. *Jackson* v. *Delany*, 13 Johns. 540. *Jackson* v. *Robins*, 16 Johns. 537. 13 Johns. 97. 3 N. H. 535.

III. The sale and sheriff's deed to Houghan are not void because more land was sold than was necessary to raise the amount of the judgment, or because it could have been subdivided to advantage, if such had been the fact. 7 Mo. 346. *Hicks* v. *Perry*. *Rector* v. *Hart*, 8 Mo. 459. 5 Mo. 322. 1 Gilman, 435. 18 Johns. 355. 9 Mo. 782. 8 Greenl. 207. 3 McCord, 142. 4 Wend. 462, 474. 2 Ala. 676. 2 Bibb, 401. 9 Watts and Serg. 182. 2 McLean, 59. 6 Humph. 281. 2 Richardson's Eq. Rep. 4. 10 Smedes and Mar. 4 Monroe, 465.

RYLAND, Judge, delivered the opinion of the court.

From the statement in this case, it appears that Wm. Stokes died on the 3d day of September, 1823. That he made his will, which was admitted to probate on the 9th of September, 1823. That Col. John O'Fallon was appointed executor by said Stokes, and that he undertook the burden of said trust.

That sometime previous to the death of Stokes, Louis A. Benoist commenced an action of assumpsit against him in the

St. Louis Circuit Court; the summons was issued on the 16th of May, 1823, and was executed on him by the sheriff of St. Louis county, on the same day. To this action, Stokes appeared by his attorney, and filed his plea, on the 9th of June, 1823. During the pendency of this action, Stokes died, and a *scire facias* was issued against his executor, O'Fallon, which was executed on him on the 8th day of January, 1824. The action was revived against John O'Fallon, the executor of said Stokes, who filed his plea, and the action was then continued. On the 8th of October, 1824, judgment was rendered against O'Fallon as executor, in favor of Benoist, for the sum of $664 07. That execution issued on this judgment, on the 17th of December, 1824, returnable on the 1st Monday in February, 1825, which said 1st Monday was, as appears from the almanac of that year, the 7th day of the month. That before the 1st Monday in February, 1825, the Legislature changed the time of holding the Circuit Court for St. Louis county, from the 1st Monday in February, to the 4th Monday in March; and by the act changing the terms of the court, declared "all suits and process made, or to be made returnable to the next terms of the several courts, as heretofore established by law, shall be returnable to the first terms of the respective courts to be holden by virtue of this act. And all sales of property, which would have been made at the first terms, as heretofore established, shall be made during the first terms to be holden by virtue of this act. In all cases where the sale of property may have been advertised to be made, on any day of the term as heretofore established, to satisfy any execution returnable to such term, the said sale shall be made on the same day of the term to be held by virtue of this act." Digest of 1825, pp. 280–281. By virtue of this statute, the execution was made returnable to the 4th Monday in March, 1825. Under this execution, the sheriff advertised the lot of ground in the city of St. Louis, now in controversy, on the 24th day of February, 1825, and sold the same under the execution, on the 18th day of April, 1825, to Thomas Houghan, for two

$2050. The sheriff made a deed to Houghan in proper form, and the defendants claim under Houghan.

At the death of Stokes, he left a daughter about thirteen years of age, named Anne, who was married before she was twenty-one years old, to one Smith, who died; and said Anne afterwards married John B. Carson, one of the present appellants and plaintiffs.

. That Stokes, by his said will, gave to said John O'Fallon, in trust for his said daughter Anne, all his real and personal estate, to be held for her use, until she married or arrived at twenty-one years of age.

In 1834, O'Fallon conveyed to said Anne, then the wife of Smith, all the real estate vested in him by the will of Stokes. In 1843, the said Anne, being then a widow, conveyed all the property back to O'Fallon and Joab Barnard, in trust for her separate use. In 1849, O'Fallon released to said Anne, then Mrs. Carson, wife of John B. Carson, all his title and interest to the property first conveyed by him to said Anne, and which she had conveyed before to him.

The plaintiffs claim the property in question under the will of Stokes, because, as they contend, the sale of it by the sheriff to Houghan was void, and the deed of the sheriff to him conveyed no title, or right, or estate to the lot in question.

The main question then, although surrounded with many others of minor importance, is, was this sale of the land to Houghan void—a mere nullity; or was it only voidable? If void, then the defendants claiming under the purchaser at that sale, can derive no title to the property sold.

We must look at the law as it stood in 1824 and 1825, and prior to these dates.

1. First, I will state, that in the opinion of this court, it was perfectly competent for the Legislature to change the times heretofore established by law, for the holding of the courts in this state, and that they could postpone and continue all suits, all process, all sales, all advertisements of sales, to such subsequent terms of the courts, as should be fixed by law. There

is nothing, then, in the point denying the power to the Legislature. "All process," when speaking of the courts and suits, is a term ample and broad enough to embrace writs of execution and *fieri facias*.

By the territorial act concerning wills, descents and distributions, approved January 25, 1817, sec. 5, it is declared, that "all lands, tenements, hereditaments shall be liable to be seized and sold upon judgment and execution obtained against the defendant or defendants in full life, or against his or her heirs, executors or administrators, after the decease of the testator or intestate ; provided, no such lands, tenements and hereditaments shall be seized and sold until after the expiration of eighteen months from the death of such ancestor, or the date of the letters testamentary or letters of administration ; and execution may issue against such lands, tenements or hereditaments after the death ot such ancestor, testator or intestate, and after the time aforesaid, in the same manner as if such person were living."

The 28th sec. of the act concerning administration, approved January 12, 1822, permits an execution to issue on a judgment against an executor or administrator, after one year from the date of the letters of administration. The 57th sec. of the same act repeals all acts and parts of acts coming within the purview of this act.

The 35th sec. of the act concerning "Practice at Law," approved January 11, 1822, declares, "If either party to an action pending in any of the courts of this State, shall die before final judgment, the executors or administrators of such party, if the action doth by law survive, shall have power to prosecute or defend such suit or action to final judgment, and if any executor or administrator, being duly served with a *scire facias*, twenty days before the return thereof, shall neglect or refuse to become a party to the suits, the court may render a judgment against the estate of the deceased, in the same manner as if the executor or administrator were a party," &c. This act was in force in March, 1822.

2.  By the act concerning administrators and executors, approved December 30, 1826, and to be in force from and after the 1st of May, 1827, it was declared that "no execution shall issue upon any judgment or decree rendered against the testator or intestate in his life time, or against his executors and administrators after his death, which judgment or decree constitutes a demand against the estate of any testator or intestate within the provisions and meaning of the act, "entitled an act concerning executors and administrators," approved 21st of February, 1825, but all such demands shall be classed and proceeded on in the Probate Court, as required by said act."

Until the passage of this last act, the sales of land, on execution against executors or administrators, were legal and authorized. This is the act that first abolished executions against the estates of deceased persons.

By the force of these various provisions of the statute of the territory and state of Missouri, it is obvious that the courts of the territory, and afterwards of the state in which actions were pending against executors or administrators, which actions were ripened into judgment, had the power and authority to enforce these judgments by execution against the estate of the testator or intestate, by selling the real estate belonging to said estate.

The common law doctrine of selling the usufruct but not the real estate itself, has no affinity or relation to this subject ; nor can it afford us any light on this subject.

The statutes cover and control this whole subject.

3.  Let us now look into the objections made by the plaintiffs' counsel against this sale. They contend that, as the execution issued within eighteen months from the death of the testator, or within eighteen months from the date of the letters testamentary, that the execution is void ; and this is the strong objection on their part.

Let us look at the words of the statute of 1817. This provides, that all lands may be sold on execution against executors and administrators, "provided no such lands, tenements or

hereditaments shall be seized and sold until after the expiration of eighteen months from the death of such ancestor or the date of the letters testamentary or letters of administration; and execution may issue against such lands, tenements or hereditaments, after the death of such ancestor, testator or intestate, and after the time aforesaid, in the same manner as if such person were living."

In this case, the death was on the 3d of September, 1823; the judgment on the 8th of October, 1824; the execution, on the 17th of December, 1824; the advertisement or notice of the sale, on the 25th of February, 1825; the sale on the 18th of April, 1825. Can any one say that this " seizure and sale" were within eighteen months from the day of the ancestor's death? On the 4th of March, 1825, eighteen months had elapsed from the day of the death of Stokes. The lot was sold on the 18th day of April, 1825. There were more than nineteen months between the date of the letters of administration and the sale. Then this seizure and sale were not within eighteen months from the death, and consequently were not obnoxious to the provisions in the statute of 1817. But the plaintiffs' counsel resort to construction of the phrase, by turning the copulative into the disjunctive—the " and" into the " or." No such lands shall be seized or sold until, &c. Why resort to this? For what practical benefits? To be enabled to overturn a fair, *bona fide* sale, at full price, made in the presence of the executor, who bid himself until the property was at its worth: the proceeds of which sale were appropriated to the discharge of so much of the debts of the testator.

Change the formation of the sentence in order to overthrow a sale under a formal execution, issued on a regular judgment, obtained after full notice to the parties, in a court of competent authority and general jurisdiction!

Courts of justice generally endeavor to support the sales made by ministerial officers in execution of their judgments. It is for the good and welfare of the community that such sales should be supported. Under this rule, men generally are will-

ing to pay reasonable prices for property at such sales ; but overturn this rule, and wild speculations and ruinous sacrifices must ensue.

But let us look a little farther into this subject of issuing execution upon a judgment against an estate.

The statute of the Legislature of the state, passed in Jan., 1822, concerning "Administration," sec. 28, is as follows : "No executor or administrator shall be compelled to pay any debts of the deceased until one year after taking letters testamentary or of administration ; and if any person shall bring an action against an executor or administrator, within one year, as aforesaid, such person, although he may obtain judgment for the amount of his debt or demand, shall not recover any costs of suit ; and no person shall take out an execution on such judgment, within one year as aforesaid, nor shall any execution issue on any judgment obtained against the testator or intestate in his life time, in less than one year after granting administration as aforesaid ; and in all cases, where judgments are rendered against executors or administrators, to be levied on the goods and chattels, lands and tenements of the deceased, the judgment shall not be entered against the executor or administrator for costs of his own proper goods."

The obvious meaning of this section is, that executions may issue on judgments against executors and administrators, against the goods and chattels, lands and tenements of the deceased, after the expiration of one year from the date of the letters.

The letters in this case were dated 9th of September, 1823 ; execution issued on 17th of December, 1824 ; the notice of sale on the 25th of February, 1825, and the sale on the 18th of April, 1825.

As to the seizure of land under execution, that is a mere phrase, applied generally to personal property.

The sheriff finds out the description of the tract by its number of section or quarter section, range and township, and its general locality, and advertises it for sale, without ever putting

his foot upon it.    He describes it as truly and as correctly as
he can : its number, if a lot ; its block, street or alley, &c.

The seizure is never felt or known, until the advertisement is
put up, to give the legal notice.    Under either of these statutes,
that of 1817 or 1822, the sale of this lot in controversy was
substantially in conformity to the provisions of the law.    In
viewing the facts, as they appear from the record, we see no
sufficient cause for sustaining a motion, had one been made to
set the sale aside in the court below, from which the execution
issued, and under which the sale was had.

In our opinion the act of the Legislature postponing the term
of the St. Louis Circuit Court, from the 1st Monday in Feb-
ruary, to the 4th Monday of March, in 1825, was one fully
within the power of the Legislature.    For more than twenty-
five years, such acts have been passed and been acquiesced in :
no one ever doubted the authority of the Legislature, as far as
my knowledge of this matter extends, and I have had more or
less to do in the courts of the country, from a period shortly
before a change of the government from a territory to the
state—a period of more than twenty-two years.    The terms
of that act were comprehensive enough to embrace executions
on judgments.

The case of *Scott* v. *Whitehill & Finch*, 1 Mo. Rep. 691,
settles the question about the force and effect of an execution
and sale under it, under circumstances much like those of the
present case.    On the 7th of October, 1824, Hill & Reese ob-
tained judgment in the Circuit Court of St. Louis, against the
administrators *de bonis non* of Thomas Brady, on which they
sued out an execution on the 17th of December, 1824.    Under
this execution, the premises in question were sold on the 31st
of March, 1825, and David Hill became the purchaser, under
whom the defendant in that suit claimed.    This execution is of
the same date of that of *Benoist* v. *O'Fallon*, under which
Walker claims title ; 7th of October, 1824, the judgment was
dated ( one day before Benoist's judgment ; ) on 17th of De-
cember, 1824, execution was issued ; sale made 31st of March,

1825. This was held by the court legal and authorized. The power of the Legislature to postpone the term ; the continuance of the execution, and the sale at the subsequent term ; the authority of the clerk to issue the execution—all could have arisen in that case, yet the power of the clerk alone was disputed. The legislative power was not mooted. The court decided that, after eighteen months from the granting letters of administration, &c., an execution might, on a judgment obtained against either the administrator or intestate, issue.

This decision settles the main question in the present case. The time of the issuing the execution only remains here undecided. The court said it might issue after eighteen months from the date of the letters of administration, &c., but did not say it could not lawfully issue before.

4. Now for the sake of argument, let us take the act of 1817, as the only one in force. What would be the effect of an execution issued within a period forbidden by law, on a judgment lawfully rendered in a court of general jurisdiction ? Is it void or voidable ?

It has been decided by this court, that a sale of the lands of deceased persons was authorized under executions against their personal representatives. The right to an execution against a decedent's real estate was never doubted. The power to issue an execution, previously to the statute of 30th of December, 1826, by a clerk of the Circuit Court, on a judgment against the estate of a deceased person, was not to be disputed. The time of doing the deed only is relied on as rendering it void. I am satisfied from reason and authority both, that the time is not so much of the substance of the power and act as to render the act void : see 4 Cranch 333. Executions were issued in this case within ten days from the rendition of the judgment, contrary to an act of Congress which provides, that " until the expiration of ten days, executions shall not issue." The Supreme Court of the United States held, that the Marshal could have justified, under these executions ; that they were

not void ; and if voidable, the proper means of destroying their efficacy had not been pursued.

In the case of *Wilson* v. *Waston*, 4 Bibb, 332, the court of appeals of Kentucky held, that the circumstances of there being more than ninety days between the *teste* of the writ and the return of the writ of execution, did not make the execution void ; although the statute required, that there should be at least twenty, and not more than ninety days, between the *teste* and the return of such writs. The court stated, that as the time required between the *teste* and return of the writ, is not of the essence of the writ, but rather directory to the clerk in issuing it, an error in that respect should not have a greater operation than the making of an execution at common law, bear teste out of term time, would have ; and consequently, at most, is but matter of error, by which the party might avoid the process, but of which the sheriff, in a proceeding against him, could not avail himself. That the execution was not absolutely void, we apprehend, there can be but little doubt.

The case cited by the plaintiffs' counsel from 8 Metcalf 500, *Penniman* v. *Cole*, is contrary to this doctrine. There the judgment was rendered on Saturday forenoon, at the end of the term ; execution issued after midnight on Monday morning following. The statute prohibits the issuing of *fieri facias*, until the lapse of *twenty-four* hours. The main question appeared to be, whether Monday was to be excluded or included in these twenty-four hours. The court excluded Sunday, and declared the writs thus issued, void. The whole object of the opinion appeared to be, to take care of the Sunday—to preserve the Sabbath day ; a very laudable one ; but, I think it so absorbed the question about the writ being void or voidable, only, that the latter received no attention. I cannot give my approbation to this opinion ; it does not call forth so clearly the assent to its correctness, as the opinion of the Supreme Court of the United States, above cited, in 4 Cranch, or the opinion of the court of appeals of Kentucky, above cited.

I have noticed the decisions of the cases cited by the coun-

sel for the plaintiffs ; that in 1st Hill, among the others, I can derive no authority from these cases, satisfying me of the propriety of overturning the sale made in this case, if there had been no law in force except the act of 1817.

But when I consider the act of January 12th, 1822, author-izing the execution to issue after the expiration of twelve months from the date of the letters, there becomes no necessity to review these authorities on the one side or the other. And that such was the law at the date of the execution, as well as at the time of the sale, the statute itself leaves not the shadow of a doubt. Therefore, I shall abstain from further comment on this point of the case. I consider the execution properly continued alive in full force by the Legislature, from the 7th day of February, 1825, the return day originally, to the next term of the court, commencing on the 4th Monday in March, 1825 ; that notice and sale thereunder were efficacious to pass the real estate sold to the purchaser, Thomas Houghan.

I find no error in the testimony of the witness, O'Fallon ; and I am satisfied as to the impracticability of dividing the lot in question, by the sheriff, without injuring the estate. Satis-fied, from the evidence, that a fair price was paid for the lot, and that there was no fraud in the sale.

5. The remaining question now will demand my attention : that is, the power of the sheriff, under the statutes in force at that time, to sell the lands devised in trust by the testator, for the benefit of his infant daughter.

The statues permitting the real estate of the testator or intes-tate to be sold, would become useless, if it was in the power of the testator to place his lands, by will, beyond the reach of his creditors. Such a power has never yet been sanctioned in our court, and is no where to be found in our statutes. The devisee is postponed to the creditor ; a man must, by our law, be just, before he can be generous.

Various are the provisions from 1815, up to the 30th of De-cember, 1826, respecting the sales of real estate belonging to the estates of deceased persons.

The executor has the power over the estate, real and person-al, in order to pay debts, and an execution is not barred by reason of a devise of the real estate.

Such has ever been the practice, up to the time that sales or executions were stopped by statute.

From the whole record in this case, then, we are of opinion, that the court below committed no error in refusing, or in giving the instructions, as they appear in this case.

We are satisfied that the court committed no error in overruling the motion for a new trial. Judge Scott concurring herein, the judgment below is affirmed, Judge Gamble not sitting in the cause, having been of counsel in the court below.