SHAW, Plaintiff in Error, v. NICHOLAY, Defendant in Error.

1. A testator can not, by devising his lands away, deprive his executor of the power of sale for the payment of debts.
2. In order to make a continuous adverse possession in successive occupants, so as to enable an occupant of land to avail himself of the possession of a preceding occupant, there should be some privity between them; the entry of the succeeding occupant must be with the consent of his predecessor, evidenced by contract, or by an act of the law passing the estate from the latter to the former.
3. A. died in possession of and claiming title to a block of ground, and devised the same to his widow. Paramount title to said block was in B. The

widow, who, with another, were appointed executrix and executor of the will, made a compromise with B.—said widow and her co-executor convey- ing to B. one-half of the block, and B. conveying to the widow the other half. The probate court granted its consent to the making of this compro- mise on the application of the co-executor. Afterwards an order of sale was made by the probate court, and the widow and her co-executor sold and conveyed to C. all the right, title and interest which A. had in and to that portion of said block quitclaimed by B. to the widow of A. This sale was made for the payment of debts. After the death of A. the widow remained in possession of said ground up to the sale to C. *Held,* that the possession of A. was an interest in said block; that the widow, under the circumstan- ces, could do no act by which the rights of creditors would be prejudiced; that she could not defeat the estate provided for the payment of debts, which would be done by annexing her possession as devisee to the title ac- quired from B.; that the sale by the executors to C. transferred the posses- sion held by the devisee under the will, and that C., in making out a defence to an ejectment by the widow founded on the title acquired by her by virtue of the compromise with B., might connect his possession after the execu- tors' sale with the possession of the widow previous to and after the com- promise, and with that of A. previous to his death.

## Error to St. Louis Land Court.

This was an action in the nature of an action of ejectment to recover possession of an undivided third of the south half of block No. 204 in the city of St. Louis. The suit was instituted May 7, 1857, by Octavia Shaw. The defendant denies plaintiff's right, but admits possession as alleged, and asserts that he holds possession as tenant of Benoist, Page and the heirs of James Gordon. The defendant further says that prior to the death of Lyman B. Shaw, husband of plain- tiff, said Benoist, Page & Shaw claimed to own said block No. 204; that the Board of the President and Directors of the St. Louis Public Schools also claimed to own the same; that said Shaw dying, devised his interest to plaintiff; that letters testamentary on his estate were granted to Franklin L. Ridgely and plaintiff; that said Benoist and Page (said Ridge- ly as executor, and said plaintiff as executrix and devisee) agreed with said School Board to compromise their conflict- ing interest in said block, the said Board to convey to said Benoist, Page and the representatives, devisee of said Shaw, their interest in the southern half, and said Benoist, Page,

and said plaintiff as devisee of said Shaw, to convey to said Board their interest in the northern half, of said black; that in accordance with said agreement the School Board, on the 9th of December, 1845, passed a resolution to that effect; that on the 15th of December, 1845, said Ridgely, the acting executor, presented his petition to the St. Louis probate court, asking that the executors of said Shaw might be allowed to make said compromise; that the board authorized said executors so to compromise; that on the —— day of December, 1845, said compromise was effected, said Benoist, Page, and said plaintiff, in whom was the legal title to said Shaw's interest, conveying to said Board all their interest in the northern half of the block, and said Board conveying to said Benoist, Page, and said plaintiff, as being the devisee of said Shaw, the southern half thereof; that on the —— day of ——, 1846, the said Ridgely and plaintiff, as executor and executrix, presented their petition to the St. Louis probate court asking that the interest belonging to the estate of said L. B. Shaw, being an undivided third of the south half of said block 204, be sold for the payment of debts; that in March, 1847, the court made such order of sale; that on the first Monday of June, 1847, said Ridgely and plaintiff, in accordance with said order of sale, sold said interest of an undivided third belonging to the estate of Shaw, and James Gordon became the purchaser, and on the 10th of April, 1848, received the deed of said Ridgely and plaintiff therefor; that said Octavia Shaw never had or held any interest or estate in any portion of said block 204 except what she acquired as devisee of said L. B. Shaw, and it was the interest she thus acquired and none other that she released to the Board of Public Schools; that no consideration for the deed of said Board to Benoist, Page and plaintiff was given other than the release to said Board of their interest in the northern half of said block. Defendant insists that the whole estate and interest in said lot which belonged to said Shaw at the time of his death, as well as what was conveyed by the deed of said School Board to plaintiff, was passed

to and vested in said James Gordon, and that, by her acting and doings in that behalf, said plaintiff is forever estopped from setting up any title in herself derived under the deed of said Board to herself, Benoist and Page, if she ever had any.

At the trial the plaintiff introduced in evidence the survey of the United States of the block No. 204, and the documentary evidence showing a designation and assignment of said block to the City of St. Louis for the use of schools. The assignment was dated March 28, 1845; also the will of Lyman B. Shaw, dated October 7, 1845. By this will Shaw devised all his estate, real, personal and mixed, except certain small legacies, to his widow, the plaintiff, subject to the payment of his debts. He made Franklin L. Ridgely and the plaintiff executor and executrix of the will. Also the deed of the School Board dated December 12, 1845, conveying to Benoist, Page and plaintiff the south half of block. In this deed the plaintiff is made a party by her simple name Octavia Shaw, and no reference is made to L. B. Shaw or his estate.

From the testimony introduced by defendant, it appeared that Ridgely and plaintiff qualified as executor and executrix; that on the 9th of December, 1845, at a meeting of the School Board, it was resolved to accept the propositions for a compromise made by plaintiff, Benoist and Page; that by deed dated December 12, 1845, said parties conveyed to the School Board the north half of block No. 204. In this deed plaintiff is described as "heir and devisee of Lyman B. Shaw." On the 13th of December, 1845, Ridgely filed a petition in the probate court setting forth the desirableness of a compromise with the Schools; that the other parties besides Mrs. Shaw had agreed to the compromise and awaited her signature to a deed of release to the Schools, and praying the judge to enter an order advising such compromise, and allowing Mrs. Shaw to pass her interest to the Schools in the north half of the block. The petition was signed by Ridgely alone. On the 15th of December, 1845, the court made the order as prayed. On the 21st of December, 1846, the court

ordered the publication of the usual notice to parties inter-
ested, to show cause why at the next term of the court a sale
of real estate should not be ordered for the payment of debts.
In March, 1847, the probate court, on the motion of plaintiff
and said Ridgely, as executrix and executor of the will of
L. B. Shaw, made an order of sale of various lots and tracts
of land for the payment of debts, including the interest now
in controversy. On the 10th of April, 1848, said Ridgely
and plaintiff, as executor and executrix, conveyed to James
Gordon, in pursuance of a sale previously made by them
under the above order in June, 1847, "all the right, title,
claim and interest which the said Lyman B. Shaw, deceased,
had of, in and to the said land."

The defendant also introduced evidence showing that at
Shaw's death in 1844, said Shaw, Page and Benoist claimed
said block as equal tenants in common by virtue of a deed
executed by Antoine Smith and wife to Auguste Chouteau,
dated June 15, 1818, and various mesne conveyances; that
as early as 1840, or 1841, the persons through whom said
Shaw, Page and Benoist claimed by said deeds had posses-
sion of said block, claiming the same adversely to all others;
that this possession continued so; that, at the death of Shaw,
he, Page and Benoist, had possession as tenants in common,
and, after his death, and until said compromise was made
with the School Board, said possession continued in said
Page, Benoist and the representatives of Shaw. After the
compromise they took and kept possession of the south half
of the block. After the executors' sale Gordon took and
held possession of said southern half with said Page and
Benoist. The defendant is a tenant under the heirs of Gor-
don and Page and Benoist.

The court refused the two instructions or declarations of
law asked by the plaintiff, one of which is as follows: "2.
If the court find from the evidence that at the death of Ly-
man B. Shaw, he and Page and Benoist were in possession of
block No. 204 of the city of St. Louis, embracing the land

in controversy, as tenants in common, claiming the same as their own adversely to all others; that the same was set-off to the Board of President and Directors of St. Louis Public Schools, by authority of the United States, as given in evidence; that the plaintiff was the devisee of said Shaw of his right and interest of, in and to the said block, and, after his death, together with said Page and Benoist, compromised with said Board their adverse claims to the same, whereby they conveyed all their right to the northern half of said block to said Board, and said Board conveyed all their right to the southern half thereof as shown by the deeds in evidence; and they and said Board then and under said conveyance occupied their respective halves thereof, then from that time ceased the possession by plaintiff, Page and Benoist of said southern half as adverse to said Board, and the possession thereof thereafter of plaintiff, Page and Benoist was without any claim thereto by said Board."

At the request of defendant the court gave the following instructions or declarations of law: "3. If the court finds from the evidence that the defendant is the tenant of the representative and heirs of James Gordon, deceased, for the undivided one-third of the lot sued for in this action; that said Gordon and his heirs, and those under whom said Gordon claimed title, have had the open, peaceable and quiet possession of the interest sued for more than ten years prior to the commencement of this suit, claiming the same under deeds purporting to convey such interest, and that such possession was adverse to the Board of President and Directors of the St. Louis Public Schools and all claiming said interest under them, then the court declares the law to be that the plaintiff can not recover. 4. The court declares the law to be, that the deed of Franklin L. Ridgely and Octavia Shaw to James Gordon, read in evidence by defendant, was effectual to pass to and vest in the said James Gordon the interest in and to the property therein described which said Octavia Shaw acquired by deed of the Board of President and Direc-

tors of the St. Louis Public Schools to Louis A. Benoist, Daniel D. Page, and said Octavia Shaw, read in evidence by plaintiff."

The plaintiff took a nonsuit, with leave, &c.

*A. Todd,* for plaintiff in error.

I. The sale and deed to Gordon did not vest in him the title acquired by Octavia Shaw from the Schools, nor was she estopped thereby from asserting this title against said sale and deed. By the will of Shaw she became entitled, as purchaser, to all the realty left by him. The compromise with the Schools vested in her the legal title in common with Benoist and Page. The consideration to the Board came from her, Benoist and Page, and from no other persons. The Schools' title was the only valid title. Mr. Shaw left no title. She acquired title under the deed of the Schools. The title thus acquired was not subject to the debts of the estate. The proceedings of the probate court were void for want of power. Octavia Shaw was not a party to them. She needed no advice or authority from the probate court to make the compromise. The sale to Gordon could only affect the interest of Shaw at the time of his death. This was only his possession thereof with Benoist and Page. It has no standing or continuance before the legal enforcement of the paramount title. Her joining in the deed with Ridgely to Gordon is not a bar. She acted as executrix. Nothing was taken from the estate of Shaw in making the compromise. Creditors were not injured. All the estate of Shaw was possession. This said compromise did not affect. The sale and deed to Gordon disposed of this possession in the south half of the block. Plaintiff gave a valuable consideration for her right under the will. She relinquished her dower. The debts have absorbed the whole estate, except the disputed possession of the north half of said block. This she conveyed to the Board. Her right under the will to the mere possession of the south half, Gordon has acquired under said sale and deed. There is left to her, then, no right to said south

half except under the deed from said Board. This right is absolute in her, and paramount over Gordon's mere possession. The allegations of the answer make no equitable bar.

*Shepley*, for defendant in error.

I. The deed of Ridgely and plaintiff to Gordon was operative to convey the title which plaintiff held as devisee under Shaw, and what she acquired by virtue of the compromise with the Schools. The acts of Ridgely in obtaining the consent of the probate court to the compromise are in law the acts of both. By the deed to Gordon it was intended to convey the title to the half block, whether as originally in Shaw or derived from the Schools. Even if she had not been an executrix and had not been a party to the deed to Gordon, yet, as a general devisee of Shaw, she stood in the position that a sale for the payment of debts took all her interest in the land. She was the only person who was interested in having the debts paid. Until that was done she could take nothing. She took, by her compromise, from the creditors their recourse upon the northern half of block for the payment of debts. The only consideration she paid to the Schools was the interest which belonged to the creditors in the northern half. A sale for the payment of debts carries title, whether the title be in an heir or devisee. (16 Ill. 318; 5 Mass. 240; 16 Pick. 107; 7 Texas, 210; 6 Ohio, 240; 16 Pet. 25.) The conveyance by the Schools was to Mrs. Shaw as devisee. It was to the interest of the cotenants of Mrs. Shaw and of creditors that the compromise should be made. The only person the Schools could convey to was Mrs. Shaw as devisee of Shaw. She did not receive it in her individual right merely. She took it as part of the assets of the estate.

II. Whatever title Shaw had at the time of his death certainly passed; if so, defendant acquired title under the statute of limitations. If there had been no compromise with the Schools, and they had commenced their suit when Shaw did hers, the Schools would have been barred. Shaw, Ben-

oist and Page had held the land during Shaw's life adversely to the Schools, and tenants holding under a written lease from them occupied the land down to the time of the sale to Gordon. Here was a holding under the original title of Shaw; and if the sale to Gordon was only of that title, then Gordon succeeded to that possession as adverse to the Schools and of Mrs. Shaw as claiming under them. She will not be allowed to set up that she was in possession under the School title when she set up and sold the land and delivered possession as belonging to her husband's estate.

SCOTT, Judge, delivered the opinion of the court.

A testator can not deprive his executor of the power of selling his lands for the payment of his debts by devising them away. A devise no more affects this power than a descent in the course of inheritance. (Carson v. Walker, 16 Mo. 87.) This is the settled law in this state.

The plaintiff maintains the ground that, as devisee, she took the title to the lot in controversy her husband had at the time of his death, subject to a power of sale for the payment of his debts; that as executrix she could be compelled to exercise this power; that notwithstanding, if by virtue of this title, thus vested in her, she has been enabled to make favorable compromise in her own right, as devisee, with those holding a title adverse to that devised to her, such compromise enured to her own benefit, and was no concern of the creditors, who were still free to act as if no compromise had been made; that there is no such privity or relation of trustee and *cestui que trust*, which entitles the creditor to any advantage or profit the devisee may make by means of the title acquired by devise, which is always subject to the power of sale for the payment of debts, a naked power which can not be defeated by alienation or disseisin; that the Schools took it from her subject to this power, and if they have been wronged, the creditors have no right to complain or take advantage of it; and, it being a matter between her and the Schools, the Schools must look to her for any injury

she may have caused them by passing a title which was after-
wards defeated; that the creditors, having a right to disregard
the compromise, are not in anywise affected by it, and can
not claim any advantage under it; that the title she passed
under the order of sale made by the probate court for the
payment of debts, was the title her deceased husband had at
the time of his death, and her act in passing that title did
not in any way affect or impair the title she acquired from
the Schools for the benefit of those claiming under her deed
as executrix conveying the land under the order of the
court for the payment of debts.

While the plaintiff thus maintains that the title which she
took as devisee, and which was the consideration for the
compromise she made with the Schools for the lot in contro-
versy, enures to her individual benefit, she must also be will-
ing to grant that she, as devisee of her husband's title, could
not affect the right of the creditors to have sold for the pay-
ment of debts such title as he had at the time of his death;
nor by any acts of hers defeat that title when conveyed to a
purchaser under proceedings for the payment of debts.

How, then, does the statute of limitations influence this
case? We must keep in mind that we are to regard the mat-
ter as though the title of L. B. Shaw and that of the Schools
were in different persons. In looking to the mere law of the
case, uninfluenced by any equitable consideration — for the
plaintiff has instituted an action at law to recover on the
mere strength of her legal title — the title that Octavia Shaw
asserts under the Schools is to be viewed as though it was
used by any other person; and the fact that she, as execu-
trix of her husband, sold his title to Gordon for the payment
of debts, does not affect her right to recover in this action of
ejectment. Octavia Shaw took L. B. Shaw's title under the
will, in the whole of block No. 204. By a deed dated 12th
December, 1845, the Schools conveyed to her their title to
the south half of the block in consideration; that she had
conveyed to them her title to the north half. The south half
of the block is the lot in controversy. By the devise, the

tenant in possession at the death of L. B. Shaw became the tenant of Octavia Shaw. On the 10th of April, 1848, Gordon, under the statutory power of sale, became the purchaser of L. B. Shaw's title. That deed was executed by Octavia Shaw as the executrix of her husband, and conveyed all the right, title and interest which L. B. Shaw had in the lot in controversy at the time of his death. Although the deed to Gordon related back to the time of L. B. Shaw's death, so as to defeat all mesne conveyances, yet that deed conveyed title only from the time of its execution. From that time he had a right to the possession and might have maintained an ejectment.

Now can Gordon, in order to make out a defence under the statute of limitations, avail himself of the prior possession which commenced under the title which he purchased? Is there, under the circumstances of this case, any privity between the possession of Gordon and his heirs since the sale and that which existed at the time of L. B. Shaw's death? When Octavia Shaw acquired the School title, which was paramount to the title she held as devisee, did the possession to which she was entitled as devisee connect itself with the paramount title of the Schools, and thus break that continuity and privity of possession between the successive tenants which is necessary to make the defence of an adverse possession available? Suppose a stranger had purchased Mrs. Shaw's School title before she sold her husband's right, title and interest as executrix, and he had brought this suit; would Gordon or his heirs, as against him, have the right to plead the statute of limitations, relying on the possession of the husband at the time of his death? The tenant under Mr. Shaw, by his devise to Mrs. Shaw, became her tenant, and if she afterwards became the purchaser of a paramount title, would he hold under that title, and would the possession connect itself with that title? If, afterwards, the husband's title is by operation of law conveyed away, is there any privity and continuity of the possession of the purchaser

8—VOL. XXX.

with the previous possession of the husband? This argument is based on the rule that, in order to make a continuous adverse possession in successive occupants, it is necessary that there should be some privity between them. When one occupant enters after another, it must be with the consent of his predecessor, indicated by contract or by an act of the law passing the possession from one to another, in order to make a continuous adverse possession. (Chouquette v. Barada, 21 Mo. 336.) But the answer to the argument is, that possession was the only title of the husband; that possession is an interest in land, is evidence of a fee, and, if it endures for a sufficient length of time without interruption, will be a perfect title. Though ordinarily, when there are two titles in one person, the possession will connect itself with the paramount title, yet Mrs. Shaw, under the circumstances, could do no act by which the rights of the creditors would be prejudiced. The law would not suffer her to do an act to defeat an estate provided for the payment of debts, which would be done by annexing her possession as devisee to the title which she acquired from the schools. If the Schools had brought this action, they would have been barred. A purchaser under the power holding in privity with the testator Shaw, his devisees and assigns, his possession, and that of all those claiming under his title, would have enured to Gordon or his heirs; and Mrs. Shaw, by taking the title of the Schools, could not deprive them of this advantage by claiming that her right to possession as devisee annexed itself to the title she acquired from them, and thus break that continuity of possession under L. B. Shaw's title necessary to make it available to Gordon and his heirs as a defence under the statute of limitations.

The foregoing contains our view of this matter as it is presented in this suit, considered only as an action of ejectment. Arriving at the conclusion we have, it will be unnecessary to determine whether the answer is sufficiently full in setting up the equity of the defendant so as to be available as a de-

fence. We do not see how the deed to Gordon could create an estoppel at law, as it only professes to convey all the right, title and interest of L. B. Shaw at the time of his death. The facts of the case, set forth in answer as an equitable defence, might create an estoppel *in pais*, or an equitable estoppel. The application of the executors to the probate court for leave to compromise is a mere fact not influencing the case in its present aspect. The probate court had no jurisdiction to authorize the executor to make a compromise. (Lucas v. Bompart, 21 Mo. 598.) Though such an application, if proved as a fact, would have its influence in an equitable view of the subject, especially as it was followed by the further fact that the executors only sold so much of the land as was obtained by the compromise. In an equitable view of the subject, the failure of the plaintiff to disclose the information that the title she held under the Schools was a subsisting pretension, although her deed may have been recorded, would not be without its weight.

It will have been observed that in framing this opinion we have overlooked the interest of Page & Benoist in the lot in controversy. Their interest was not involved, and the mention of it would have served no other purpose than to embarrass it. It was thought therefore best to leave it unnoticed. The opinion, as written, would not have been the least changed, as to the effect of it, had the interest of Page & Benoist not been noticed.

The judgment is affirmed. The other judges concur.