## ANNA KAINEA, IDA LONG AND F. C. WARREN *v.* THOMAS KREUGER AND GEORGE KAHA.

### No. 1891.

SUBMITTED JULY 17, 1929.      DECIDED OCTOBER 5, 1929.

PERRY, C. J., BANKS AND PARSONS, JJ.

OPINION OF THE COURT BY PERRY, C. J.

This is a suit in equity for the partition of a piece of land three and one-half acres in area, known as the ili of Paukukalo, in Wailuku, Maui, and being apana 2, R. P. 4256, L. C. A. 3234, to Kaianui. The allegations of the petition are that the three petitioners and the respondent, Thomas Kreuger, are owners of undivided interests in the land and that the respondent, George Kaha, is the owner of a right of dower in an undivided one-fourth interest, having acquired the same by conveyance. Respondent Kreuger admitted the allegations of the petition to be

true, but the respondent Kaha filed an answer in which he claimed ownership in fee simple of a certain portion of the land containing an area of seventeen one-hundredths of an acre and therein described by metes and bounds, alleging further that he and his predecessors in interest had held adverse possession of this particular portion of the land for more than the statutory period prior to the date of the institution of these proceedings. In conformity with the provisions of chapter 159, R. L. 1925, relating to partition of real estate and the settlement of disputed questions of title, a jury was called in the partition suit and trial was had before it of the issue thus presented by the pleadings as to whether Kaha was the owner in fee simple of the particular portion containing an area of seventeen one-hundredths of an acre or was merely the holder of a dower interest in an undivided one-fourth of the whole area of three and one-half acres. The jury by its verdict found that Kaha was the owner of the seventeen one-hundredths of an acre and had acquired title thereto by adverse possession. A commissioner having reported that the remainder of the land could not be equitably divided in kind, a decree was entered in conformity with the verdict and the report of the commissioner, declaring that Kaha was the owner in fee simple of the particular portion which he claimed and ordering that the remainder of the land be sold by the commissioner and the proceeds divided amongst those entitled thereto. From this decree the petitioners appealed to this court, assigning errors in the conduct of the trial before the jury and in the verdict.

On behalf of Kaha evidence was adduced tending to show that prior to August 1, 1913, one George D. Kahaokamoku, Sr., enclosed the seventeen one-hundredths of an acre with a substantial fence and from that time until his death on March 23, 1919, continuously occupied the

property openly and under claim of ownership; that for a period of one or two weeks immediately following the death of Kahaokamoku, Sr., Hanapule, his widow, held and occupied the property and then sold either all of the furniture that was in the house, or all of it that was serviceable, proceeded to Honolulu and never again returned to the land; that almost immediately after her departure for Honolulu Kaha, the present respondent, who was the keiki hanai of Kahaokamoku, Sr., took possession of the piece of land (seventeen one-hundredths of an acre) and either himself or through tenants of his maintained possession openly and under claim of ownership, continuously until the time of the trial.

Kaha gave testimony to the effect that during the whole of the period of the occupancy of Kahaokamoku, Sr., and of his own occupancy, he had every year paid taxes on the land, excepting in 1926 when, as he testified, W. F. Kaae, his tenant, paid them. In support of this claim of payment of taxes the respondent offered certain tax receipts for the years 1913, 1914, 1915, 1916, 1917, 1918, 1920, 1921, 1922, 1923 and 1924, and these, against the objection of the petitioners, were admitted in evidence. The receipts do not show upon their face upon what property the taxes represented by them were paid. They were not legal evidence tending in any way to show that in the years mentioned Kaha, the respondent, had paid taxes on the particular piece of land, seventeen one-hundredths of an acre in area, which was involved in the controversy before the jury. They have no proper tendency to prove the fact in support of which they were offered, to-wit, payment of taxes on that particular piece of land.

While there was evidence in the case tending to prove Kaha's claim of adverse possession,—evidence, it may be assumed, sufficient to support the verdict in that respect—there was on the other hand abundant evidence tending

to show that the claim of a possession by the respondent since the death of Kahaokamoku, Sr., which was continuous, open and hostile had no foundation in fact and showing further that ever since the death of Kahaokamoku, Sr., the land and the building thereon had, for a period of three or four years, remained wholly unoccupied and that during that period the fence had not been kept up but had been allowed to fall into decay, the land was untilled and no signs of actual possession were visible on the property. If a verdict had been rendered for the petitioners, it would have been amply supported by evidence before the jury. In other words, upon the issue as to whether Kaha had had possession that was actual and open, continuous and hostile, the evidence was highly conflicting. How far the jurors were moved to reach the verdict for the respondent by the tax receipts under consideration, cannot be known. For aught that appears to the contrary they may have constituted the deciding piece of evidence which led to a verdict for the respondent. "Reversible error appears where, as here, the decision of the court" (or jury) "was based partly upon assumed facts of which there was no evidence in the case or which were attempted to be shown by evidence improperly admitted over objection, and the evidence on the main issue was conflicting." *O. R. & L. Co. v. Kaili,* 22 Haw. 673, 679. This prejudicial error is sufficient in itself to require the granting of a new trial.

Since a new trial is to be had, it may be well to touch briefly upon other assignments of error.

The respondent Kaha was permitted by the court, over an objection by the petitioners, to testify that "from this deed" (a deed which had been placed in evidence and which purported to convey certain land from Kahaokamoku, Sr., to the respondent) "and being a long time on the land, that is where I put in my claim." In this there

was no error. It was competent for the respondent to say what his claim was, particularly in view of the repeated efforts of counsel for the petitioners to obtain a categorical statement from the respondent or his attorney to the effect that he did not claim the paper title to the land.

Another objection was to testimony from another witness that Kahaokamoku, Sr., had told him "that where they are, the property belongs to them." "It is settled in this Territory, in accordance with the rule in most of the States, that the declarations of a person in possession of land as to the nature of his claim go to characterize his possession, are part of the *res gestae* and tend to prove the hostility of claim necessary to an adverse holding; * * * but it is also well settled that declarations which are but narratives of past occurrences are not admissible as part of the *res gestae*." *O. R. & L. Co.* v. *Kaili,* 22 Haw. 673, 675. The statement, when made by Kahaokamoku, Sr., to the witness, was not a mere narrative of a past occurrence, but was a declaration of the claim of ownership that he was then making to the land. It was one form of notice to the world that the possession which he was holding was hostile to all others.

A deed executed June 10, 1910, by Kahaokamoku, Sr., to one Minnie Kreuger Akau of all of the grantor's right, title and interest in apana 2 of R. P. 4256 having been introduced in evidence, Kahaokamoku, Sr., could not, on and after August 1, 1913, be regarded as a tenant in common with the petitioners as to any part of the ili of Paukukalo and therefore there was no greater burden upon Kaha, the present respondent, to prove ouster of the petitioners than ordinarily rests upon any person setting up a claim of adverse possession in an action of ejectment. After his deed to Minnie Akau, Kahaokamoku, Sr., was a stranger to the land and his possession, like that of his

grantee, the present respondent, was that of a mere disseizor and not that of a tenant in common.

There was some evidence tending to show that after the death of Kahaokamoku, Sr., the respondent authorized a Japanese, and later one W. F. Kaae, to occupy under him the seventeen one-hundredths of an acre and to cultivate the property and maintain the fences. Their acts of possession thus became the acts of the respondent and their possession inured to the benefit of the respondent as an adverse holder. "It is not necessary that the person claiming title by adverse possession should have been in personal occupation of the land. Possession by an agent or by a tenant under him inures to his benefit and satisfies the requirements of the statute of limitations. What a man may do himself, in the matter of taking and holding possession of real estate, he may do by another." 2 C. J. 73.

Hanapule, the widow of Kahaokamoku, Sr., signed the deed from the latter to the respondent. In that deed a clause was included conveying all of her right and possibility of dower to the grantee. Claim has been made in this case in this court that she was a necessary party respondent. Without so holding, it may be observed that that question can be avoided by having her joined now as a party. Her position with reference to the possession and the transactions involved would then become clear and if she disclaims all right, title and interest in the land, that likewise will be helpful.

One of the questions, and perhaps the main question argued in this case, is whether, assuming the jury to believe from the evidence that Kahaokamoku, Sr., the widow and Kaha, the respondent, each in turn, held the land under a claim of right and ownership, the three possessions can be tacked to each other so as to constitute continuous possession for the statutory period,—for, with-

out tacking, possession was not shown to have been held by any one of the three for as much as ten years. The general rule is well established that "the several possessions of successive disseisors cannot be tacked together so as to make a continuous possession, but where there is such a privity of estate or title as that the several possessions can be referred to the original entry they may be joined, and are regarded as a continuous possession, as in the case of landlord and tenant, ancestor and heirs, and vendor and vendee." 1 A. & E. Enc. L. 842. But "the privity required to constitute continuous adverse possession may be effected by any conveyance, agreement, or understanding which has for its object a transfer of the rights of the original entry." *Ib.*, 844. That transfer need not be in writing. It may be proven by oral evidence. "The only essential of the transfer is that the predecessor passes it to the successor by mutual consent, as distinguished from the case where a possessor abandons possession generally, and another, finding the premises unoccupied, enters without contact or relation with the former." *Illinois Steel Co.* v. *Paczocha,* 139 Wis. 23, 28, 29. "Doubtless the possession must be connected and continuous so that the possession of the true owner shall not constructively intervene between them; but such continuity and connection may be effected by any conveyance, agreement and understanding which has for its object a transfer of the rights of the possessor or of his possession and is accompanied by a transfer of possession in fact. * * * The mode adopted for the transfer of the possession may give rise to questions between the parties to the transfer, but as respects the rights of third persons, against whom the possession is held adversely, it seems to us to be immaterial, if successive transfers of possession were in fact made, whether such transfers were effected by will, by deed or by mere agreement, either written or verbal."

*Rich* v. *Naffziger*, 255 Ill. 98, 105, 106. "Privity denotes merely a succession of relationships created by deed or other act or by operation of law, a continuous possession by mutual consent, so that possession of the true owner shall not constructively intervene. It is not essential that there should be conveyances between successive occupants provided they claim under each other in some sufficient way." 2 C. J. 85. "No paper evidence of a transfer of possession is necessary when the holding is under claim of the first entryman." *Illinois Steel Co.* v. *Budzisz*, 48 L. R. A. (Wis.) 830, 835. "All that is necessary to privity between successive occupants of property and in regard thereto is that one receive his possession from the other by act of such other or by operation of law." *Ib.*, 835. To the same effect are: *Shaw* v. *Nicholay*, 30 Mo. 99, 110; *Haynes* v. *Boardman*, 119 Mass. 414, 415; *Vandall* v. *St. Martin*, 42 Minn. 163, 166, 167; *Smith* v. *Chapin*, 31 Conn. 530, 531, 532; *McNeely* v. *Langan*, 22 Ohio St. 32, 37; *Faloon* v. *Simshauser*, 130 Ill. 649, 656.

The deed introduced in evidence from G. D. Kahaokamoku, Sr., and Hanapule, his wife, to George Kahaokamoku, Jr. (the respondent), dated August 1, 1913, and conveying "all of my undivided right in and to apana 2, * * * R. P. 4256," and providing that "all of the above conditions will not be effective by the signature of myself and my wife but all the rights and privileges aforesaid remain with me and Hanapule (w), my wife, while we are alive, but in the event of our death the above conveyance becomes effective," has been attacked on various grounds and may or may not be effective as a deed of the seventeen one-hundredths of an acre. However that may be, it is at least some evidence tending to show that the land was not simply abandoned upon the death of Kahaokamoku, Sr., and that it was the intention and the desire of the first possessor to transfer the possession to

his widow. The possession of the widow, short as it was, can therefore be tacked to the possession of Kahaokamoku, Sr. The two persons were not in the position of separate and distinct disseizors, but the second holder was attempting to possess under the first. So, also, by the same deed Hanapule conveyed all of her right and·possibility of dower to the respondent. Without passing upon the effectiveness of that provision as a conveyance, the deed is some evidence tending to show that the widow desired that the respondent should succeed her in the possession and therefore the respondent's possession can be tacked to that of the widow and the original possessor. It need scarcely be added that the showing contained in the deed in this respect is rebuttable by other evidence.

The decree and the verdict are set aside and a new trial before a jury upon the issue of Kaha's claim of adverse possession is granted.

*E. Vincent* for petitioners.

*E. R. Bevins* for George Kaha, respondent-appellee.