———o———

CHAS. W. FREEMAN *et al.*, Respondents, *vs.* JOHN THOMPSON, *et al.*, Appellants.

1. *Practice, civil—Notice—Publication, order of—Sufficiency of.*—An order of publication, informing defendant that a suit had been commenced against him, founded on an account for the sum of $150, is a sufficient compliance with the statute.

2. *Courts, Circuit, records of—Verity of, assailed collaterally.*—The verity of the records of the Circuit Courts cannot be impeached collaterally.

3. *Statute, construction of—Circuit Court of Polk County—Change of terms—Return of writs.*—The act of Jan. 26, 1864, changing the time of holding the Polk Circuit Court, did not require the writs already issued to be returned for correction as to the time of holding court, but made such writs returnable by force of the law to the substituted terms of court.

4. *Attachment, suits by—Courts—When jurisdiction acquired.*—In attachment causes, the jurisdiction over any given subject matter is obtained by a levy thereon of a writ properly issued. [Hardin vs. Lee, 51 Mo., 241, affirmed.]

| | |
|---|---|
| 53 | 183 |
| 100 | 321 |
| 53 | 183 |
| 43a | 501 |
| 53 | 183 |
| 51a | 9 |
| 53 | 183 |
| 122 | 636 |
| 53 | 183 |
| 61a | 691 |
| 53 | 183 |
| 63a | 608 |
| 53 | 183 |
| 154 | 606 |
| 154 | 607 |
| 53 | 183 |
| 87a | 576 |

*Appeal from Polk Circuit Court.*

*John S. Phelps,* for Appellants.

I. The Legislature, by act of Jan. 26th, 1864, changed the time of holding courts in Polk Circuit, and made "all writs, process and proceedings returnable to the substituted terms." The Legislature had the right so to enact. (Carson vs. Walker, 16 Mo., 68.)

II. In attachment causes, it is the levy of the attachment on property which gives the court jurisdiction. (Hardin vs. Lee, 51 Mo., 241; Drake Att., §§ 437, 448; Porter vs. Partee, 7 Humph., 168; Beach vs. Abbot, 6 Vern., 586; Williams vs. Stewart, 3 Wis., 773; Paine vs. Mooreland, 15 Ohio, 435; Cochran's Heirs vs. Loring, 17 Ohio, 409; Voorhies vs. Bank of U. S., 10 Pet., 449; Cooper vs. Reynolds, 10 Wal., 308; 1 Smith's L. Cas., §§ 1015, 1016.)

III. Proceedings of superior tribunals must be presumed to be correct unless manifestly erroneous, and cannot be contradicted or convicted of error by extrinsic evidence. (1 Smith's L. Cas., § 995; Cooley's Court Lim., §§ 406, 407, 996, 997, 998; Wilcox vs. Kassich, 2 Mich., 165; McCarthy vs. Marsh, 1 Seld., 263; Watson vs. Jackson, 10 Mo., 329; Montgomery vs. Forley, 5 Mo., 233.)

IV. When facts necessary to give a superior court jurisdiction are set forth in the record, they cannot be contradicted in collateral proceedings. (1 Smith's L. Cas., §§ 996, 997; Newman case vs. City of Cincinnati, 18 Ohio, 323; Granger vs. Clark, 22 Me., 128; Cook vs. Darling, 18 Pick., 393.)

*Wright & Johnson,* for Respondents.

I. The order of publication in the case of McClurg vs. Freeman is wholly insufficient, and is no notice to the defendant; and the judgment being rendered without notice is void.

II. After the time of the holding of the Circuit Court had been changed, the notice was published to appear at the former time of holding court, and judgment by default was taken against defendant at a day prior to that he was notified to appear. Such notice was void.

III. In attachment cases the court must get jurisdiction of the person as well as the thing, by notice, or the proceeding is void. (Thatcher vs. Powell, 6 Wheat.; 119 ; Bloom vs. Burdick, 1 Hill, 140. *et seq.* ; Sherwood vs. Reade, 7 Hill, 433 ; McNair vs. Biddle, 8 Mo., 257, 264 ; Fithian vs. Monks, 43 Mo., 502.)

IV. The affidavit of the printer of the publication of the notice in attachment is not conclusive. It is a jurisdictional fact, and the record does not say that the necessary fact was found proven. (2 Phil. Ev., Hill and Edw. notes, p. 157, and cases above referred to.)

SHERWOOD, Judge, delivered the opinion of the court.

Action of ejectment brought in the Circuit Court by Freeman and others againstThompson and others for a lot of ground in the town of Bolivar. Petition and answer in usual form. The cause was tried by the court, a jury having been waived, and defendants admitted, that Thos. W. Freeman, deceased, was the owner of the lands described in the petition; that he died in October, 1865, and that plaintiffs were his only heirs at law. The plaintiffs thereupon rested. The defendants to maintain the issue on their part then read in evidence, without objection, a deed to defendants, Lunceford and Viles, dated September 26th, 1865, from John Caldwell, sheriff of Polk county, reciting the issuance of a writ of attachment on the 22nd day of October, 1865, by the clerk of the Circuit Court of said county, in favor of Jos. W. McClurg, and against Thomas W. Freeman, and the levy on the next day of the writ on the lot as the property of said Freeman, and as described in the petition, (except that the names of the town, county and State are omitted,) and recovery of judgment on the 31st day of March, 1865, by the said Jos. W. McClurg against Thomas W. Freeman for the sum of, etc., and the real estate attached, ordered to be sold; the issuance of a special *fi. fa.* on said judgment in favor of "said Jos. W. McClurg," and against Thomas W. Freeman, and the sale under that special execution of the property, previously mentioned as hav-

ing been attached, to Lunceford and Viles, two of the defendants, after due notice, etc., on the 25th day of September, 1865, and defendants rested.

The plaintiffs then, but for what purpose is not stated, read in evidence the records and files of the Polk Circuit Court in the case of Joseph W. McClurg vs. Thomas W. Freeman, showing the filing of the petition as well as the affidavit and bond for an attachment at the October term, 1863, of said court, the approval of said bond, the ordering of a writ of attachment to issue and publication to be made, notifying Thomas W. Freeman that an action had been commenced against him "founded on an account for the sum of $150;" that his property had been attached, etc., and requiring him to appear at the next March term, commencing on the 5th Monday after the 2nd Monday in March, 1864, and answer the action. The petition, affidavit, bond· and writ were in usual form, and "Joseph W. McClurg" was the only party plaintiff mentioned therein. The writ of attachment is of the same date as that described in the sheriff's deed, and the property, (among other) mentioned in the return indorsed on the writ, corresponds in every particular with the property sued for.

Among the files in said cause, and attached thereto, was an affidavit, annexed to the printed order of publication in the said cause, which affidavit purported to be made by J. W. D. L. F. Mack, of the firm of Boren & Mack, publishers of the Springfield Journal, (the paper in which the publication was ordered to be made,) and stated that the publication was made in said paper for four weeks successively in Nos. 38, 39, 40, 41 of vol. two of that paper, and dated February 9, 16, 22 and 28, 1864. The notice of publication above referred to was in accordance with the order of court before mentioned. The interlocutory judgment in the cause showed, that court convened at Bolivar on the 28th day of March, 1864; that on 5th day of the term, "it appearing to the full satisfaction of the court that the defendant had been duly notified of the commencement of this action by publication in the Springfield Journal, a weekly newspaper published in Greene coun-

ty, Missouri, for four weeks, the last insertion being at least four weeks before the first day of the present term of this court, and defendant having failed to plead, answer, or demur to plaintiff's petition, the same is taken as confessed, etc."

The final judgment refers to the default taken against the defendant, and orders a special *fi. fa.* to issue for the sale of the property attached, and the special execution conforms to the sheriff's deed in the description of the property, and contains the same omission as the deed, as to name of town, county and State, but refers to the property as having been attached on the 23rd of October, 1863, (in which attachment return the property is correctly described,) and the return on the special *fi. fa.* shows the sale of the property to Viles and Lunceford as described in the sheriff's deed.

The defendants then proved by the clerk, that he could not find any writ of attachment or judgment in favor of Jos. W. McClurg in his office, nor any other judgment in favor of McClurg vs. Thomas W. Freeman, except the one read in evidence.

The plaintiffs then, against the objection of defendants, offered, and read in evidence, the deposition of James W. Boren, one of the publishers of the Springfield Journal, in which the affidavit of J. W. D. L. F. Mack, one of the publishers of said paper, is contradicted in several of its essential features as to the times when, and the numbers of the paper in which, the order of publication was published.

These objections of defendants were substantially as follows:

First. Because the deposition was offered to invalidate the records of the court in the case of McClurg vs. Freeman, and was therefore inadmississible.

Second. Because offered to disprove a fact which the records of the court in that case had recited as proven.

Third. Because parol evidence will not be allowed to contradict the facts of publication, when a recital of that fact by record entry, duly appears.

These objections being overruled, defendants excepted.

The foregoing was all the evidence. A number of declarations of law were then asked by plaintiffs, of which those given and objected to by defendants, were to this effect:

That the deed offered in evidence by defendants from the sheriff, Caldwell, reciting a judgment in favor of Joseph W. McClurg against Thomas W. Freeman, and the records and proceedings in that case showing that that judgment was rendered on publication, unless such publication was made for four weeks successively, the last insertion at least four weeks before the commencement of the term at which the defendant was required to appear, the judgment and sale thereunder were of no validity.

That a publication fails to give the notice which the law requires in such cases, if it, in regard to the nature of plaintiff's demand, only states that the action is founded on "an account for the sum of $150."

That the levy of a writ of attachment in this State upon the property of a defendant, without due notice, actual or constructive, will not authorize a judgment under which such property can be sold.

That the affidavit of the printer or publisher of a newspaper, though *prima facie* evidence of the fact of publication, yet it may be contradicted by other evidence.

That the affidavit filed in the case of McClurg vs. Freeman is bad, and could not have been published in a weekly newspaper, published regularly as required by law.

On these declarations being given, defendants excepted, and asked of the court to declare the law substantially as follows:

First. That the writ of attachment in the case of McClurg vs. Freeman, having issued after the due filing of the petition, affidavit and bond, and properly levied on the property of Freeman, gave the court jurisdiction over that property, and that the judgment was therefore valid.

Second. That the sale of that property by virtue of the execution issued on that judgment, and the deed read in evidence to Lunceford and Viles, pass the title to them, and plaintiffs are not entitled to recover.

Freeman, et al. v. Thompson, et al.

Third. That the testimony of Boren, whose deposition was read, should not have been admitted.

Fourth. That although the interlocutory judgment may have been prematurely taken at the March term, 1864, yet that would not render the final judgment which was taken at the March term, 1865, void; and that McClurg, in that cause, was at that term entitled to final judgment.

Fifth. That the court having in the suit of McClurg vs. Freeman decided that due notice of that suit had been given when the final judgment therein was rendered, that decision of the court cannot in a collateral proceeding be attacked and shown to be erroneous by parol testimony.

All of these declarations were refused, and defendants again excepted, and judgment going for plaintiffs, after moving unsuccessfully for a new trial, defendants bring this case here by appeal.

By this record there are four questions presented for our consideration :

First. Was the order of publication sufficiently specific as to the nature and amount of the plaintiff's demand in the suit of McClurg vs. Freeman ?

Second. Was that order published in conformity to law ?

Third. Was it competent by parol evidence to contradict the record reciting such publication ?

Fourth. In proceedings by attachment what is it which gives, and at what period during the progress of the cause does the court acquire, jurisdiction ?

These questions will be answered in their order.

As to the first: In Sloan vs. Forse, 11 Mo., 126, it was held under the law of 1845, that an order notifying "that an action of assumpsit for the sum of $403.70 has been commenced against him," was a sufficient compliance with the statute, although the defendant, at the same term judgment was taken against him on that notice, and prior to the assessment of damages, moved to set that default aside. And if the order in that case was sufficient, most certainly it should be so regarded in this, where the point arises collaterally.

As to the second question : Was the order published in conformity to law ?

This question is answered in the affirmative by the records of the court, expressly reciting that fact.   And even in the absence of such recital, the presumption, which is the invariable incident of, and always attaches to the acts and doings of courts of general jurisdiction, could afford to our interrogatory no other than an equally satisfactory and conclusive answer.

Here there has been a solemn adjudication as to the matter of publication, unappealed from and unreserved, and that too, by a court competent to adjudicate and pass upon the validity of the service of its process, whether actual or constructive.

To deny to Circuit Courts the legitimate exercise of such a power, would be to deprive them of every thing but the bare name and semblance of authority, and defeat the very end and purpose for which the records, that of importing " absolute verity," are required by law to be kept. (Borden vs. State, 6 Eng., 519; Granger vs. Clarke, 22 Me., 128 ; Cook vs. Darling, 18 Pick., 393; 1 Smith's L. Cas., 1022 ; Voorhies vs. Bank of U. S., 10 Pet., 449; Grignon, Lessee vs. Astor, 2 How., 319.)

Of course these remarks as to the conclusiveness of record recitals are only intended to apply to cases, where those recitals are attempted to be collaterally assailed.

But aside from the prevalence of the rule above referred to, it would be by no means difficult to maintain, that the notice in the case of McClurg vs. Freeman was published according to law.   The writ of attachment and order of publication were made returnable to the term commencing the 5th Monday after the 2nd Monday in March, 1864, which would be April 17th.  But the Legislature by act approved January 26th, 1864, (Sess. Acts 1863 and '64, p. 287.) changed the time of holding the Polk Circuit Court to the 4th Mondays of March and September.

Section two of that act provides, that " all writs, process and proceedings made returnable to the courts of either of the

above named counties shall be returnable to the courts held under this act."

This act took effect on its passage, and the respondents now contend, that as the order of publication was not issued and published until February 9th 1864, fourteen days after the law took effect, that the publication was in violation of the law, as the order required defendant to appear on the 5th Monday after 2nd Monday in March, *i. e.* the 17th day of April, while the second section of the act referred to "required all writs, process and proceedings made returnable to the courts as then existing, should be *made* returnable to the term fixed by said act."

But there is no such provision ; and that is not the language of the act, which in express terms refers to writs, process and proceedings "made returnable" to the terms of the courts as originally established, and provides that such writs, process, etc., should "be returnable *to the courts under this act.*"

The times of holding all the terms of the courts of the seventh circuit were changed by this act, and it is very evident that the Legislature intended, by operation of law, to lengthen, if necessary, the time in which writs, process, etc., might have to be returned in some cases, and to shorten it in others. And this it was perfectly competent for that body to do. (See Carson vs. Walker, 16 Mo., 68.)

This act, as we have seen, passed January 26, 1864, barely two months and two days prior to the time when by its terms the Polk Circuit Court was to be held, and took effect immediately on its passage ; and the respectful consideration, which is due to a co-ordinate branch of the government, compels the belief, that it never was the intention of the framers of that law to perpetrate such an absurdity as to require the clerks of all the various courts therein enumerated to recall all writs, process and proceedings, made returnable to the courts as then existing, and make them returnable to the terms provided for in the new law. And yet such is the only legitimate deduction from what clearly is the theory of respondents, that the law did not by its own force accomplish a change in the writs, process, etc., already "made returnable."

Our third question has been impliedly answered in our re-
plies to the second. But further under that head. The affi-
davit of the printer was a mere matter of preliminary proof, and
accomplished its functions so soon as it was filed and passed up-
on by the court. And yet plaintiffs were permitted, years after
the judgment was rendered, in a collateral action to re-open
the case and introduce evidence to falsify the record.

With equal propriety the court could in the same collateral
way have permitted the judgment itself to be re-opened, and a
review had of the evidence on which it was rendered.
(Chambers vs. Carthel, 35 Mo., 374.)

Any other rule, than that the records of courts of compe-
tent jurisdiction shall in all collateral proceedings be conclu-
sive and impregnable to attack, would be subversive of all
the safe-guards which the law in its wisdom has from the
earliest period of its history thrown around the sanctity of
records. Thus in 10 Vin. Abr. Tit. Record C., pl. 2, from Br.
E. pl. 78, this case is reported :

"Record of outlawry of divers persons was certified in the
exchequer, among whom one was certified out-lawed, and was
not out-lawed, and that his goods forfeited were in the hands
of 'I. N.,' and upon process made against him, he came and
said he was not outlawed ; and parcel of the record came by
chancery out of " B. R." into the exchequer; and Green, jus-
tice of " B. R.," came into the exchequer, and said he was not
out-lawed, but that it was misprision of the clerk. Skipwith
said : Though all the justice would record the contrary, they
shall not be credited when we have recorded that he is out
lawed."

And that case is cited with approval in McPherson vs. Cun-
liff, 11 Serg. and Rawle, 438, where an attack had been made
on a sale of land ordered by a probate court on the ground of
total mistake as to the real parties in interest, the court having
ordered the sale to be made under the supposition that a
family of children, who were bastards, were really the heirs of
the deceased.

In Granger vs. Clarke, *supra*, it is said : " If in looking at

the subject matter of the judgment it can be clearly seen to be not within the jurisdiction of the court rendering it, it may be treated as a nullity without reversal."

But where a want of jurisdiction actually exists in a domes-tic tribunal of general jurisdiction, and is not apparent upon the record, there must be some appropriate mode of ascer-taining it. This mode is by writ of error. And until such appropriate mode is resorted to, and has proved effectual, the judgment must be considered as conclusive and as importing absolute verity.

This was a case where *nul tiel record* was plead by defend-ant; that no notice or process was ever served on him; and that the judgment (on which suit was brought) had been ob-tained and entered by fraud.

In McCarthy vs. Marsh, 1 Seld., 263, where the plaintiff had sued in ejectment, and it became material to ascertain whether or no McCarthy was an alien; and he introduced the record of his naturalization on the 26th of August, 1834, and the re-citals of that record were attempted to be overthrown by par-ol testimony, and by an entry of record of the same court, dated September 2nd, 1831, showing that Daniel McCarthy, instead of declaring his intention to become a citizen, had merely reported his arrival in the country; but inasmuch as the recital in the minutes of August 1834, did not refer to the proceedings of September 1831, as being the declaration on which the court admitted McCarthy to citizenship, the record was held conclusive; and that the record of 1834 compelled the presumption, that evidence other than that contained in the minutes of 1831, had been produced.

But why multiply authorities as to the conclusiveness, as be-tween the parties, of record recitals. The horn-books of the profession abound with illustrations of this familiar rule.

As to the fourth and last question :

In proceedings by attachment what is it which gives, and at what period during the progress of the cause does the court acquire, jurisdiction ?

And this I regard as the question of paramount importance

in this case; all the others I have endeavored to consider, being but minor and secondary, and in no way aiding or retarding the arrival herein. at a correct conclusion.

In Hardin vs. Lee, 51 Mo., 241, it was said *inter alia,* that "In attachment causes the jurisdiction over any given subject matter is obtained by the levy thereon of a writ properly issued. And no matter what, nor how great errors or irregularities may subsequently occur, the *res* remains still in the grasp of the court, and its judgment in regard thereto will be valid and binding, until reversed on error or by appeal, or set aside in a direct and appropriate proceeding for that purpose."

And no subsequent examination has induced the slightest change in the opinion there enunciated.

The position here taken is no new departure from old and well established rules, no legal heresy promulgated for the first time, contravening the orthodox canons of the law; but one amply supported by a long line of carefully reasoned cases, adjudicated by many of the ablest tribunals, both State and National, in this country.

Under the law in Ohio, the plaintiff was required to have the notice to the defendant published, and if he failed for six weeks successively to publish such notice, the statute directed that the attachment should be dismissed with costs. (A statute it will observed, much more strict in this respect than ours.)

And yet, in Paine vs. Moorland, 15 Ohio, 435, where no such notice was in fact given, but judgment rendered and the property attached sold, the court held the proceedings valid; among other things remarking:

"A court acquires jurisdiction by its own process. If the process of the court be executed upon the person or thing concerning which the court is to pronounce judgment, jurisdiction is acquired. The writ draws the person or thing within the power of the court; the court once having by its process acquired the power to adjudicate upon a person or thing, it has what is called jurisdiction. This power or jurisdiction is

only acquired by its process. To give jurisdiction is the object of process. The mode of executing or serving process is sometimes directed or permitted to be by notice of publication. All process issues under the seal of the court. Notice by publication is not process, but in certain cases in contemplation of law is equivalent to service of process. The process in attachment is the writ authorizing a seizure of the property. No process is issued against the person, because the proceeding is *in rem*. The statute, however, regards it but just that notice should be given to the debtor, not for the purpose of giving the court jurisdiction over the subject matter, but to permit the debtor to have an opportunity to protect his rights, and directs that the writ shall be quashed if it be not given. The distinction is between a lack of power or want of jurisdiction in the court, and a wrongful or defective execution of the power. In the first instance, all acts of a court not having jurisdiction or power are void, in the latter voidable only. A court then may act, first, without power or jurisdiction, second, having power or jurisdiction may exercise it wrongfully ; or third, irregularly. In the first instance, the act or judgment of the court is wholly void, and is as though it had not been done.

"The second is wrong and must be reversed upon error. The third is irregular and must be corrected by motion. The latter is where the power is rightfully exercised, but in an irregular way. Hence there is a vast distinction between a defect of power, a wrongful exercise of power, and an irregular exercise of power."

In Cooper vs. Reynolds, 10 Wallace, 308, in regard to the point we are now considering, Judge Miller in delivering the opinion of the court says :

" If the defendant appears, the cause becomes mainly a suit in personam with the added incident that the property attached remains liable, under the control of the court, to answer any demand which may be established against the defendant by the final judgment of the court. But if there is no appearance of the defendant, and no service of process on him, the case

becomes, in its essential nature, a proceeding *in rem*, the only effect of which is to subject the property attached to the payment of the demand which the court may find due to the plaintiff. * * * Now, in this class of cases, on what does the jurisdiction of the court depend ? It seems to us that the seizure of the property, or that which in this case is to the same effect, the levy of the writ of attachment on it, is the one essential requisite to jurisdiction, as it unquestionably is in proceedings purely *in rem.* Without this the court can proceed no further; with it the court can proceed to subject that property to the demand of plaintiff." To the same effect, see Voorhees vs. Bank of U. S., 10 Pet., 449; Williams vs. Stewart, 3 Wis., 773; Beach vs. Abbott, 6 Verm., 586; Porter vs. Partee, 7 Humph., 168; Cochran's heirs vs. Loring, 17 Ohio, 409; Drake, Att. § 437; Hollingsworth vs. Barbour, 4 Pet., 475.

· It will be thus seen from the above cited authorities, that in attachment causes, where property has been seized or levied on under a writ properly issued, notice is not an essential of jurisdiction. As Chief Justice Marshall said in the case of " The Mary :" " Where the proceedings are against the person, notice is served personally or by publication ; where they are *in rem*, notice is served upon the thing itself."

The difference to be observed between those proceedings, whose seizure of property at the outset at once confers jurisdiction over that which is seized, and those methods of procedure which look to the acquisition or enforcement of some specific right, title or remedy, is this : That in the former class of cases, jurisdiction without seizure or levy never attaches, no matter how long or how often notice may be given ; nor in the latter until publication be made. In other words, it is the levy of the writ in one case, and the publication in the other, that gives the court power to act; and this is jurisdiction.

In a general way, a court may be said to have jurisdiction over every case which may hereafter be instituted therein. Thus courts are said to have jurisdiction to divorce parties, to foreclose mortgages, to enforce vendor's liens, etc., although a suit of that nature may never be brought therein.

But the term as here employed is with the more limited signification of the power to deal with some specific property, subject matter, right or claim, and concerning which some adjudication or relief is sought.

But we are cited by respondents to a number of authorities, both in this State and elsewhere, as supporting their position, that any and every judgment where the defendant has not been notified is void; and the necessary inference, evidently intended to be drawn therefrom, is that the judgment of McClurg vs. Freeman was also a nullity. A brief examination will therefore be now made of these cases. The case of Durossett's adm'r, vs. Hale, 38 Mo., 346, does not involve the point under discussion. That was a direct proceeding by motion to set aside a judgment for irregularity on the ground that defendant had not been properly notified. And the record did not show that any affidavit had been filed. And so the loose remarks of Judge Holmes, that the judgment was void because the notice did not inform the defendant "that his property had been attached," must be construed with reference to the circumstances of that particular case.

In Massey vs. Scott, 49 Mo., 278, the only matter passed upon by the court below, (and as a matter of course the only one upon which this court could adjudicate), was, whether the title of land which had been attached would be conveyed by a sale under a special *fi fa.*, but where only a general judgment had been rendered in the cause.

And the remarks there, as to what gave and what completed jurisdiction in suits by attachment, were entirely *dehors* the record. But even there *arguendo* it is stated, " that the court obtained jurisdiction by the levy of the attachment." Though singularly enough in the next sentence, the learned judge, who delivered the opinion of the court, says: "And after the order of publication had been duly published, the jurisdiction was complete to render a judgment binding the attached property."

Now conceding, that these *dicta* of the learned judge were part and parcel of the opinion of the court, it would still be extremely difficult to comprehend, how a court could obtain

jurisdiction by the levy of its writ, and that jurisdiction at the same time be not " complete" until the subsequent occurrence of publication.

The case of Smith vs. Ross, 7 Mo., 463, was simply a proceeding *in personam* on a judgment recovered in Alabama, which purported to have been rendered on personal service.

Caldwell vs. Lockridge, 9 Mo., 362, merely decides this: That after an administrator has made a final settlement, in which an allowance had been made to him, the court could not, without notice to him, and after his departure, even during the same term, set aside that allowance. But that case, as well as that of Smith vs. Ross, *supra*, does not militate in the least against the position I have assumed; and the same may be said of Anderson vs. Brown, 9 Mo., 646; Howard vs. Thornton, 50 Mo. 291; McNair vs. Biddle, 8 Mo., 257; Fithian vs. Monks, 43 Mo. 502.

The case of Thatcher vs. Powell, 6 Wheat. 119, relates to a tax-sale , a proceeding so summary, that the law respecting these sales has always been strictly construed.

Bloom vs. Burdick, 1 Hill, 140, asserts the doctrine, that in a proceeding to sell a decedent's estate the proper notice must be given before the court would acquire any jurisdiction ; and as heretofore seen, I fully concur in that doctrine.

The case of Sherwood vs. Reade, 7 Hill, 433, is only in relation to duties of commissioners respecting sales of real estate.

So then it will be observed, that none of the authorities cited by respondents have any applicability to the point in hand, nor are they in the slightest degree in antagonism with the principles for which I have contended. And I very much doubt, whether a single well considered case can be found in opposition thereto.

No attention will be given to the point raised here by respondents, that the sheriff's deed to Lunceford and Viles was void for uncertainty, as neither the attention of the court, nor of the defendants, seems to have been called to that matter when the cause was tried.

In conclusion, the court erred on all the questions presented by this record, and for this reason the judgment will be reversed and the cause remanded.

Judge Adams not sitting; the other judges concur.

——————o——————

