WILLIAM B. THOMPSON, Appellant, v. MAE
 SIMPSON, Defendant; GAIUS PADDOCK, Re-
 spondent.

**St. Louis Court of Appeals, April 19, 1910.**

1. **TRIAL PRACTICE: Dismissing Appeal from Justice's Court:
 Improper to Exercise Jurisdiction when Appeal Dismissed.**
 On an appeal from a justice's court to the circuit court in an
 attachment suit, where the appeal was dismissed for lack of
 jurisdiction in the circuit court in consequence of the justice
 from whom the appeal was taken having no jurisdiction, it was
 improper to overrule a motion filed by appellant to establish
 the priority of his lien, since that act was an exercise of juris-
 diction.

2. **JUDGMENTS: Conclusiveness.** A judgment entry must be
 taken to express the true ruling of the court.

3. **ATTACHMENT: Jurisdiction: Misnomer of Defendant.** In at-
 tachment, jurisdiction over the subject-matter is obtained by
 the levy thereon of a writ properly issued, and no matter
 what error or irregularities may subsequently occur, the *res*
 remains in the grasp of the court, and its judgment in regard
 thereto will be valid until reversed or set aside in a direct
 proceeding for that purpose; and hence an attachment levy on
 property was not void because defendant, a married woman,
 was sued by her maiden name.

4. ————: **Priority of Liens.** The levy not being a nullity, one
 subsequently bringing attachment could not acquire priority,
 under section 415, Revised Statutes 1899, where he knew when
 he levied his writ that the other plaintiff had sued and levied
 on the property, and knew the amount of claim and did not
 think of opposing the attachment, or that he could do so, until
 after he had ascertained the mistake in defendant's name,
 when he seized on the mistake as a means to obtain a lien prior
 to the other plaintiff's, which he had previously endeavored to
 get out of the way by a settlement.

Appeal from St. Louis City Circuit Court.—*Hon.
 Geo. H. Williams,* Judge.

AFFIRMED.

148 App—10

*Fred Armstrong, Jr.,* for appellant.

(1)   Calling a married woman by her former name is a misnomer.   Traver v. Railroad, 3 Keys (N. Y. Ct. of App.) 497; Beavers v. Baucum, 33 Ark. 722; Commonwealth v. Brown, 2 Gray (Mass.) 358.   See also: Dobell v. Loker, 1 Handy 574; Turner v. Gregory, 151 Mo. 103; Trayer v. Wood, 96 Mo. 478; Chamberlain v. Blodgett, 96 Mo. 483; Whelan v. Weaver, 93 Mo. 430; Burge v. Burge, 94 Mo. App. 15; Lorie v. Abernathy, 63 Mo. App. 248; Graton v. Land & Lbr. Co., 189 Mo. 322; Keaton v. Jorndt, 220 Mo. 117.   (2)   Attachment by misnomer is void, at least as to subsequent attaching creditors.   Lorie v. Abernathy, 63 Mo. App. 249; Dobell v. Loker, 1 Handy 574; Davenport v. Doady, 3 Abb. Pr. 409; Patrick v. Solinger, 9 Daly 149; authorities under point 1.   (3)   The fact that persons interested know who is, in fact, intended by the misnomer is immaterial. Lorie v. Abernathy, 63 Mo. App. 249; Green v. Meyers, 98 Mo. App. 438; authorities under point 2.   (4)   (a) The proper method of determining priority of attachment is under section 415, R. S. 1899.   Bank v. Steinberg, 44 Mo. App. 401; Patterson v. Stephenson, 77 Mo. 329; Sutton v. Stevens, 41 Mo. App. 44; Metzner v. Graham, 57 Mo. 404.   (b)   This procedure is the proper one so long as the liens of two attachments conflict, *e. g.,* when the second attachment is levied on personal property after judgment in the first attachment suit, but before execution; for the lien of the attachment persists until execution, and the judgment lien does not take effect till levy of the execution.  R. S. 1899, sec. 3187; 4 Cyc. 625 and 652, and cases cited on both pages; Ensworth v. King, 50 Mo. 477; Pepperdine v. Bank, 100 Mo. App. 387; Rudolph v. McDonald, 6 Neb. 163; Burnham v. Dickson, 5 Okla. 112; Bourne v. Hocker, 50 Ky. 23; Wallace v. Sharick, 15 Wash. 643; Hanchett v. Ives, 133 Ill. 332, contra, concededly against weight of authority on *stare decisis.*   Moore v. Fitz, 15 Ind. 43;

Eddy v. Weaver, 37 Kan. 540; Bank v. Reinitz, 4 N. Y. Supp. 801. So long as the lien of the attachment persists, claims to the property itself are founded only on the attachments, and this is the precise situation the statute is intended to control. Stephenson v. Parker Sta. Co., 142 Mo. 13; Bank v. Steinberg, 44 Mo. App. 401; Metzner v. Graham, 57 Mo. 404; Burnham v. Blank, 49 Mo. App. 56; Adler v. Anderson, 42 Mo. App. 189. (5) Judgment obtained by misnomer on default under publication. is absolutely void and subject to attack collaterally as well as directly. Turner v. Gregory, 151 Mo. 100; cases cited under point 1. It goes without saying that no process should issue on a judgment absolutely void, no matter how the fact that it is void comes to the court's attention. (6) When once files in a justice court have been sent to a circuit court on appeal, they become files of the circuit court, and should not be returned to the justice court after judgment in the circuit court. R. S. 1899, secs. 4069, 4072. (7) An appeal, regular and proper in form, should not be dismissed merely because the appellate court holds contrary to the lower court, nor even because the appellate court holds the lower court to have been without jurisdiction. St. Louis County v. Lind, 42 Mo. 348; Esler v. Wabash, 115 Mo. App. 574.

*Roland M. Homer* for respondent.

(1) The justice of peace had no jurisdiction to determine the priority between the judgment of Paddock and the attachment of plaintiff. R. S. 1899, sec. 415; Swallow v. Duncan, 18 Mo. App. 622; Bank v. Steinberg, 44 Mo. App. 401; Stevenson v. Stationery Co., 142 Mo. 13. (2) The Paddock attachment suit, brought against Mae Becker, the name which was signed to the lease, the name in which the bank stock stood, the name which the bank returned as being the holder of said stock, the only name she ever used in Missouri,

was properly brought, the attachment properly sustained and the judgment properly rendered. Moseley v. Reilly, 126 Mo. 128; Parry v. Woodson, 33 Mo. 347; Walker v. Railroad, 193 Mo. 476; Schaeffer v. Brewery Co., 4 Mo. App. 118; Railroad v. Burress, 82 Ind. 83. (3) There was no evidence in the case that justified any finding that Mae Becker had changed her name to Mae Simpson prior to the Paddock judgment. (4) The contract sued upon in the Paddock case was executed in the name of Mae Becker, and suit may always be brought against a party in the name in which the contract is executed. State v. Kelly, 191 Mo. 687; Comer v. Jackson, 50 Ala. 387; Rich v. Mayer, 7 N. Y. Supp. 69; Kemp v. McCormack, 1 Mont. 420; McColgan v. Oklahoma, 5 Okla. 567; Graham v. Essgner, 28 Ill. App. 273; Commonwealth v. Hughes, 10 B. Mon. 160; Turner v. Gregory, 151 Mo. 100; 14 Ency. Pl. and Pr., 283. (5) In an attachment proceeding creditors other than the plaintiff cannot take advantage of irregularities in the original case, although they be such as would furnish good ground for objection on the part of the defendant. Rudolph v. McDonald, 6 Neb. 163; Drake on Attachment, sec. 273; Freidenberg v. Pierson, 18 Cal. 152; Scrivener v. Dietz, 68 Cal. 1; Harvey v. Foster, 64 Cal. 296; Ward v. Howard, 12 Ohio St. 158; Van Camp v. Bank, 147 N. Y. 150; Freedman v. Holberg, 89 Mo. App. 345. (6) The right party was sued by Paddock. It is simply a question of identity. Parry v. Woodson, 33 Mo. 347; Beavers v. Baucum, 33 Ark. 722; Travers v. Railroad, 3 Keys 497; Lane v. Duchac, 73 Wis. 654; Peterson v. Little, 74 Iowa 223; Bank v. Jaggers, 31 Md. 38; Green v. Reserve Assn., 79 Mo. App. 179; Walker v. Railroad, 193 Mo. 476; Schaeffer v. Brewery Co., 4 Mo. App. 118. (7) The appellant appealed to equity powers of the circuit court. There is no doubt of the "good faith" of Paddock. Can as much be said for the appellant? R. S. 1899, sec. 415; Freedman v. Holberg, 89 Mo. App. 340.

GOODE, J.—This contest is between two attaching creditors whose writs were levied on the same shares of bank stock owned by the defendant. The first action was instituted by respondent Gaius Paddock on September 23, 1907, before Justice Spaulding in the city of St. Louis. The defendant in said action was designated as Mae Becker, which had been her name until the summer of 1907, and she was known by it in St. Louis where she lived, and under it had made the lease Paddock sued on, his action being for five hundred dollars for the rent of the demised premises which accrued after she had abandoned them and left the state. At the time the action was instituted, and when the judgment was given, October 30, 1907, neither Paddock nor appellant Thompson knew the defendant had married a man named Simpson, as she had in Lake county, Indiana, July 18, 1907. The Paddock writ of attachment was levied by a constable September 24, 1907, "on all shares of stock in the Franklin Bank as the property of said defendant." The bank reported there were two shares standing in the name of Mae Becker and an undivided interest in half a share standing in the name of Jewel and Mae Becker, the shares being subject to a debt due the bank. No personal service was had on her, but she was notified by publication and on October 30th judgment was rendered for five hundred dollars by default in favor of Paddock and against Mae Becker, to be satisfied out of the attached property. Appellant held a demand against the defendant Mae Becker-Simpson, and appears to have represented some other persons who had claims against her. After judgment had been given for Paddock, a conversation occurred between him and Thompson about the shares, wherein Thompson agreed he would endeavor to induce Mrs. Becker to settle Paddock's demand for three hundred dollars, which the latter was willing to take by way of compromise. Thompson was not her attorney in the Paddock case but he had been in previous mat-

ters, and his purpose was to get rid of Paddock's lien so the shares could be attached by himself and other creditors of Mrs. Becker for their demands. He wrote her about the proposed settlement, she being then in Chicago or Indiana, and on receipt of her reply learned for the first time she had married again and her name was Simpson. The negotiation for a settlement fell through and on November 20, 1907, appellant filed an action of attachment before Justice Grier of St. Louis against defendant by the name of Mae Simpson. The writ was issued returnable December 4, 1907, the Franklin Bank garnished and the writ returned by the constable as having been levied on all the interest of Mae Simpson in two shares of the capital stock of said bank, represented by certificate No. 5109, and one-half share of said stock standing in the name of Mae Becker and Jewel Becker, a minor. Notice by publication was given in said action to Mae Simpson and later, on January 3, 1908, the attachment was sustained and judgment rendered by default against defendant, to be satisfied out of the attached property. After judgments had been obtained as stated against defendant in favor of both appellant and respondent, the former, on January 21, 1908, filed a motion in Justice Grier's court, recited the institution of the prior action by appellant before Justice Spaulding and the prior levy of the writ issued in said action, recited further respondent claimed the defendant designated as Mae Becker in his action was the same person who was designated as Mae Simpson in appellant's action, alleged the misstatement of her name in the first action rendered the attachment therein void against the junior action, asked the justice to transfer the case of Thompson versus Mae Simpson to the court of Justice Spaulding that the latter might settle and determine all the controversies which had arisen between the plaintiffs in the two cases in relation to the property, "and the priority, validity, good faith, force and effect of the different attachments," as provided in

section 415 of the Revised Statutes of 1899. This motion was sustained and the papers and transcript of the cause transmitted to Justice Spaulding February 3, 1908. Later appellant appeared and filed a motion in Justice Spaulding's court, reciting the facts as we have stated them, and praying said court to dissolve the attachment in the case of Gaius Paddock against Mae Becker and postpone it to the attachment levied by appellant, on the ground the first attachment was void as against appellant in consequence of the writ having been issued and levied in it under a name other than that of the owner of the property. This motion was heard March 20th and the justice determined he had no jurisdiction. An appeal was taken from the decision of Justice Spaulding to the circuit court where respondent filed a motion to dismiss the appeal. The matter was heard March 19, 1909, at the February term, between appellant and respondent, the defendant Mae Becker-Simpson not appearing. The court overruled the motion of appellant to dissolve and postpone the first attachment, sustained the levy of the attachment in said case as prior to the levy of appellant, directed all papers in the first case to be returned to Justice Spaulding and ordered said justice to proceed to enforce the levy; adjudged further, that the appeal taken by appellant be dismissed at his cost and the cost of Wm. E. Becker, surety on the appeal bond. An appeal was taken from the judgment of the circuit court to this court.

It is to be borne in mind the motion by appellant before Justice Spaulding to establish the priority of his lien, was filed in his own case against Mae Simpson and the appeal from the justice's judgment was taken in said case. Really it does not appear that any appeal or proceeding occurred in Justice Spaulding's court which carried to the circuit court the case of Paddock v. Becker, but the justice transmitted the papers in said case. This partly explains the apparent incongruity

in the judgment, which dismissed the appeal taken by
Thompson in his case against Mae Simpson, ordered
the costs taxed against him and his surety on the appeal
bond and at the same time overruled his motion to dis-
miss and postpone the attachment in the Paddock case,
ordered the papers in said case returned to the justice
and directed the justice to proceed to enforce the levy
in it.   Nevertheless a certain inconsistency remains in
the judgment given in the case of Thompson v. Simpson,
the one at bar, for though the appeal of the plaintiff
from the justice's decision was dismissed, the plaintiff's
motion for postponement of the Paddock lien was over-
ruled.   No theory is suggested on which the appeal could
have been dismissed, except lack of jurisdiction in the
circuit court, in consequence of Justice Spaulding hav-
ing acquired no jurisdiction of Thompson v. Simpson
by the order of Justice Grier transferring it to him. But
if there was a lack of jurisdiction in the first instance
in Justice Spaulding, and consequently in the circuit
court, the judgment overruling appellant's motion filed
in the cause was improper since it was an exercise of
jurisdiction; and probably the judgment entry does not
express the true ruling of the court; but of course it
must be taken to express it.   From any point of view
the effect of the judgment is to leave the Paddock lien
intact as the first lien and to leave appellant's lien sub-
ject to it.   In our opinion, and for reasons to be stated,
this was the right result.   Taking for granted, for the
purposes of the decision, that Justice Spaulding ac-
quired jurisdiction of Thompson v. Simpson, and might
settle the controversies between the two attaching cred-
itors notwithstanding the cases of both had passed al-
ready into judgment and Paddock's judgment had been
obtained before Thompson's action was instituted, we
will set forth the reasons why we think appellant was
not entitled to be accorded priority to respondent's lien.
The argument for appellant is that as respondent sued
defendant by a name she did not bear at the time the

action was commenced, and took out publication against her under said name, no lien was fastened on the bank shares by levying the attachment, and, therefore, appellant acquired the first lien when he levied his writ in November. We think an important fact in dealing with this question is that appellant was not misled to his prejudice by respondent's having sued defendant as Mae Becker, instead of Mae Simpson; when appellant levied his writ he knew respondent had sued already and levied on the shares of stock and the amount of his claim. In truth appellant did not think of opposing said attachment, or that he could do so, until after he had ascertained the mistake in the name of defendant, when he seized on the mistake as a means to obtain a lien prior to respondent's which previously he had recognized and endeavored to get out of the way by a settlement. Therefore it is obvious appellant has no footing more meritorious than a technical one on which to claim priority. Nevertheless priority should be awarded to him if respondent's attachment is absolutely void and created no lien in consequence of the mistake. As respondent's action was by constructive service, possibly the decisions of our Supreme Court would sustain the proposition that the judgment was void if it had been given in an action for taxes, or in any other than an attachment action. [Skelton v. Sackett, 91 Mo. 377; Vincent v. Means, 184 Mo. 327, 82 S. W. 96; Gillingham v. Brown, 187 Mo. 181, 85 S. W. 1113.] It long has been declared in this State that in an action of attachment the jurisdiction of the court is obtained by the levy of the writ. In Hardin v. Lee, 51 Mo. 241, the court thus stated the law: "In attachment causes the jurisdiction over any given subject-matter is obtained by the levy thereon of a writ properly issued. And no matter what, nor how great errors or irregularities may subsequently occur, the *res* remains still in the grasp of the court, and its judgment in regard thereto will be valid and binding, until reversed on error or by appeal,

or set aside in a direct and appropriate proceeding for that purpose." This doctrine has been adhered to until the present time in a series of decisions of which we cite Freeman v. Thompson, 53 Mo. 183; Holland v. Adair, 55 Mo. 40; Williams v. Lobban, 206 Mo. 408, 104 S. W. 58; Randall v. Snyder, 214 Mo. 23, 112 S. W. 529. The Supreme Court in Randall v. Snyder distinguished anew actions by attachment, where property had been levied on, from other classes of actions as regards the effect upon jurisdiction of a defective order of publication. In said case the order of publication involved, and pursuant to which judgment had been given and land sold and purchased, did not describe the land, wherefore it was contended in a collateral action no title had been obtained by the purchaser at the execution sale. It was said that though in a case for delinquent taxes the omission from the order of publication of the description of the land would be fatal, a different rule applied where land had been attached and thereby the court had obtained jurisdiction of it; that is, of the *res*. In Williams v. Lobban, the like distinction was taken and it was said in an action for taxes against a party, if the service was constructive and designated the party by the initials of his name, the mistake would be fatal, but it was not so where the action was by attachment. Perhaps the most thorough consideration of the question and review of the authorities will be found in the opinion of Judge SHERWOOD in Freeman v. Thompson, supra. Among other cases examined was Payne v. Moreland, 15 Oh. 435, wherein it appeared a statute required notice of an attachment to be published six weeks or the action to be dismissed; appeared further the notice had not been published and judgment had been rendered without publication and the attached property sold; yet the Supreme Court held the proceeding valid. The case of Cooper v. Reynolds, 10 Wall. 308, was also cited, wherein the Supreme Court of the United States said when property was attached

and there was no service on the defendant or appearance by him, the proceeding was essentially one *in rem,* and the prerequisite of jurisdiction was levy of the writ of attachment, without which levy the court could not proceed, but with it could proceed and subject the property to the demand of the plaintiff. If we concede for argument's sake only, that if the action by Paddock against Mrs. Becker had not been by attachment, the mistake in her name would have been fatal to the judgment, there being only constructive service, it is clear under the authorities supra this could not be the result, considering the nature of the action. It follows appellant's motion for priority should not have been sustained on the theory that no lien was acquired by the levy of the Paddock writ but said levy was utterly void.

Appellant argues further that if not void as to every one, the levy was void as against his junior attachment, citing in support of the proposition Lorie v. Abernathy, 63 Mo. App. 249, wherein the plaintiff Abernathy had sued a corporation, the real name of which was the Wing Furniture Company, as the M. A. Wing Furniture & Auction Company. Lorie had afterwards sued in the correct name and his later levy was made the prior lien, the court saying Abernathy's attachment was not a lien as to third parties because it had been issued against "some other entity" instead of the Wing Furniture Company. If that is true, the levy would seem to have been a nullity as against the true defendant, and the remark of the court which discriminates the case from the one at bar was superfluous, yet the court treated the fact of the second levy having been made believing it was the first as important. The court declared it must hold Lorie was entitled to priority because he "instituted his action and went to expense, in reliance upon the record fact that there was no attachment lien in favor of Abernathy against the Wing Furniture Company." The decisions given in the cases cited in the opinion in support of its doctrine turned on the fact of the junior lien

having been obtained in ignorance of the first levy. [Terry v. Sisson, 125 Mass. 560; Moore v. Graham, 58 Mich. 25.]   In the Massachusetts case an attachment action had been brought against Sarah Sisson and a bank garnished as her debtor.   There was no account in the bank in the name of Sarah Sisson, but one in the name of Sarah F. Sisson.   After the levy the bank disbursed the account to Sarah F. Sisson, the depositor, and was exonerated from liability under the garnishment.   The court said in Massachusetts the middle name or initial was an essential part of the name, and therefore Sarah Sisson and Sarah F. Sisson were different names; that the bank had no funds to the credit of the former on its books, and in good faith and with no knowledge or notice that the person intended to be sued was Sarah F. Sisson, had lawfully paid over to her the money which belonged to her.   In the Michigan case a man had been garnished as the debtor of John C. Davis, when in fact he owed Jonathan C. Davis.   Prior to the judgment the latter had assigned the debt to Graham who was not aware of the garnishment proceeding and paid full value for the claim.   On these facts it was held the proceeding could not be amended, as against Graham, to show the true name of the party sued.

This proceeding for priority was taken under a section of the statutes that says where the same property is attached in several actions against the same defendant, the court may settle all controversies which may arise between the plaintiffs in relation to the property and the priority, good faith, force and effect of the different attachments, and may dissolve any attachment, partially or wholly, or postpone it to another, or make such order in the premises as right and justice may require; further providing that if the actions are in different courts of co-ordinate jurisdiction, such controversies shall be determined by the court out of which the first attachment writ was issued.   The statute

breathes the spirit of equity, its policy is to promote right and justice, and that policy would be defeated by postponing respondent's lien to appellant's, unless respondent's levy was a nullity, which, as we have seen, was not so.

The judgment is affirmed. All concur.